[L. A. No. 28136. In Bank. Feb. 9, 1965.]

STATIONERS CORPORATION et al., Plaintiffs and Appellants, v. DUN & BRADSTREET, INC., et al., Defendants and Respondents.

Wolver & Wolver and Eugene L. Wolver for Plaintiffs and Appellants.

Flint & MacKay, John J. Waller and Edwin Freston for Defendants and Respondents.

MOSK, J.—Stationers Corporation and two of its officers, Lillian Boyd and Omar Boyd, Jr., filed a complaint for "Defamation of Business, Libel and Negligence" against Dun

& Bradstreet, a mercantile agency corporation, and one of its employees. Defendants made a motion for summary judgment under section 437c of the Code of Civil Procedure[1] and filed three declarations in support of the motion. Plaintiffs filed two in opposition.[2] The trial court granted the motion on the ground that no issue of material fact existed, the uncontroverted facts contained in the declarations having established a complete defense under the mercantile agency privilege set forth in section 47, subdivision 3, of the Civil Code.[3] Plaintiffs' principal contention on this appeal from the ensuing judgment is that the motion should have been denied because the declarations showed that there existed triable issues of fact between the parties.

The complaint sets forth six causes of action, all based on two documents issued by defendants. The first three causes of action assert that defendants libeled plaintiffs with malice, and the fourth, fifth, and sixth allege that the libels resulted from defendants' negligence. As to the first three causes of action, it is alleged that prior to the issuance of the publications in question, a corporation named Healy Enterprises, Inc., had filed an action against plaintiffs and that defendants subsequently issued two written documents concerning the litigation, one of which is referred to as the "Special Notice"

[1]Section 437c of the Code of Civil Procedure provides in part, "if it is claimed the action has no merit . . . on motion of either party . . . supported by affidavit of any person or persons having knowledge of the facts . . . the complaint may be dismissed and judgment may be entered, in the discretion of the court, unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact. . . . The affidavit or affidavits in support of the motion must contain facts sufficient to entitle plaintiff or defendant to a judgment in the action, and the facts stated therein shall be within the personal knowledge of the affiant, and shall be set forth with particularity, and each affidavit shall show affirmatively that affiant, if sworn as a witness, can testify competently thereto. The affidavit or affidavits in opposition to said motion shall be made by the plaintiff or defendant, or by any other person having knowledge of the facts, and together shall set forth facts showing that . . . a good cause of action exists upon the merits."

[2]While section 437c of the Code of Civil Procedure requires affidavits in support of or in opposition to motions for summary judgment, section 2015.5 permits the use of an unsworn declaration under penalty of perjury. Here the parties have filed declarations rather than affidavits.

[3]Section 47, subdivision 3, of the Civil Code provides: "A privileged publication or broadcast is one made . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

report and the other as the "Key Account Service" letter. The "Special Notice" report related that the action was filed by Healy and described the complaint as alleging, among other things, that the Boyds set unnecessarily large salaries for themselves and that this constituted fraudulent misappropriation of corporation assets because neither of them had the experience, education, or qualifications for their respective positions.[4] The description of the Healy complaint is asserted to be false in various respects. Primary reliance is placed by plaintiffs upon the "Key Account Service" letter, issued at the same time, which stated, "The management [of Stationers] has not been available for comment on the suit filed by Healy Enterprises, Inc. In outside quarters, a number of authorities are of the opinion that this suit has considerable merit, and may bring about the removal of at least Lillian Boyd from the top management. It has long been considered that she was not the one to head this business." The complaint filed by plaintiffs in the present action asserts that the statements contained in the letter to the effect that the management of Stationers was not available for comment on the Healy suit and that it had long been considered Mrs. Boyd was not the one to head the business are both false, and that the statement falsely attributes the comments to "authorities" since, assertedly, that word means legal authorities and no such persons were contacted by defendants as to the merits of the Healy suit.

It is further alleged that defendants knew that these statements were not true, that they did not have probable cause to believe them to be true, that the publications were made with malice, and that defendants intended to injure plaintiffs or acted with such wanton and reckless disregard of plaintiffs' rights as to imply hatred toward them. The publications were distributed, continues the complaint, to customers and creditors of Stationers, and such customers and creditors, with defendants' knowledge, showed the publications to others, resulting in distribution to the public generally, particularly to furnishers and users of stationery supplies. General and exemplary damages are prayed for, based on assertions that as a result of the publications Stationers has been injured

---

[4]Other matters which the Healy complaint alleged, according to the "Special Notice" report, were that Mrs. Boyd had declined to permit perusal of the corporation minute books, that no annual stockholders' meetings had been held, and that the prayer was that the Boyds be ordered to account for the funds they had received and be removed from office.

in its business and the individual plaintiffs have been exposed to hatred and ridicule and harmed in their occupations.

Before setting forth the declarations filed in connection with the motion for summary judgment, we shall consider the rules relating to the granting of such judgments, as well as the substantive law of libel applicable to the type of communication involved here.

Numerous decisions have discussed the law of summary judgments, and the rules relating thereto are well settled. ▮ The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. ▮ Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. ▮ The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. ▮▮ In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. ▮ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257] ; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 260-261 [223 P.2d 244] ; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal. 2d 553, 556 [122 P.2d 264] ; *Snider* v. *Snider* (1962) 200 Cal. App.2d 741, 747-749 [19 Cal.Rptr. 709] ; Code Civ. Proc., § 437c.) ▮ Thus, the trial court was justified in granting the motion here only if the declarations filed in support of it, strictly construed, contain facts sufficient to entitle the defendants to judgment, and those of the plaintiffs, liberally construed, show that there was no issue of fact to be tried.

We turn now to the substantive rules applicable to the case before us. Defendants, as we have seen, claim that the communications in question are privileged under section 47, subdivision 3, of the Civil Code, which provides that a publication is privileged if it is made without malice, to a person

interested therein, by one who is also interested, or by one who is requested by the person interested to give the information.

No California case appears to have applied the privilege set forth in this section to a mercantile agency, but it has been applied in an analogous situation. In *Pavlovsky* v. *Board of Trade* (1959) 171 Cal.App.2d 110 [340 P.2d 63], the defendant was a board whose members reported the names of debtors to it and the membership thereupon acted jointly to refuse credit to those whose names had been reported. The court held that section 47, subdivision 3, applied but stated that the board was not a mercantile agency because it did not collect and distribute credit information for profit. ■ A majority of other jurisdictions which have considered the question hold that the reports of mercantile agencies are privileged if made without malice to one who has an interest in the matters communicated (see Note, 30 A.L.R.2d 776, 777 et seq.), and when such reports meet the requirements of section 47, subdivision 3, they should be accorded the privilege set forth in that section. In determining whether a defendant may take advantage of the privilege, it has been held that malice may be inferred if the defendant does not have reasonable or probable cause to believe his statement to be true. (*MacLeod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 552 [343 P.2d 36]; *Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 797-800 [197 P.2d 713]; see *Snively* v. *Record Publishing Co.* (1921) 185 Cal. 565, 577 [198 P. 1].)

■ When the declarations filed in connection with the motion for summary judgment are viewed in the light of the principles set forth above, it is clear that the trial court erred in granting the motion because at least one triable issue of fact was raised by plaintiffs, namely, whether defendants had probable cause to believe their statements to be true and, therefore, whether they had acted with malice.

The three declarations filed in support of the motion were made by employees of Dun & Bradstreet, who describe the method by which they compiled and distributed the publications, and in each case it is asserted that the declarant bears no ill will or hatred toward the plaintiffs. W. R. Wagoner, the employee who is joined as a defendant in the action, declares that he had received a teletyped communication requesting information about the Healy suit and thereupon requested another employee to obtain details about the suit from court files. Upon securing the information regarding

the substance of the Healy complaint, Wagoner attempted, without success, to reach both Albert Hasler, an officer of Stationers, and Lillian Boyd. Before releasing the publications he spoke to the local credit managers of two suppliers who sell office supplies to Stationers, and they told him that Mrs. Boyd was inadequate as an administrator and that the suit filed by Healy might result in her removal from office. During the three or four months prior to the issuance of the publications he had discussed Stationers' situation with two other credit managers of firms which sold office supplies to Stationers, a former executive-level employee of Stationers, and a former employee of Dun & Bradstreet who was familiar with the operations of Stationers, and they voiced substantially the same views. A general description of what these persons told Wagoner is set forth in the declaration. Wagoner states that he relied on this information in preparing the reports and that he believed his informants to be reliable and their statements to be truthful.

The declaration of Albert Hasler, filed in opposition to the motion for summary judgment, challenges Wagoner's assertions regarding his attempts to reach Hasler. Hasler states he had tried at various times to ascertain from defendants the names of the "authorities" referred to by Wagoner, that he had been unable to do so, and that without the names of the credit managers referred to by Wagoner he (Hasler) was unable to contravene the allegations made with regard to them.[5] It is also asserted that Stationers has 1,075 firms from which it buys office supplies and that the credit managers of four of those suppliers, representing .004 per cent of the total, were insufficient to justify the statements made by defendants as to the ability of the individual plaintiffs.

No case has been found considering the question whether a defendant claiming the qualified privilege of section 47,

[5]Hasler's declaration states that he attempted to ascertain the names of any "legal authorities" relied on by defendants and that in view of defendants' failure to disclose the names, he claimed that the "authorities" referred to were not legal authorities. As indicated above, in a subsequent portion of the declaration it is stated that Hasler was unable to challenge the allegations in Wagoner's declaration relating to the credit managers because their names had not been disclosed. In view of the rules of liberal construction of the affidavits of the party opposing a motion for summary judgment, Hasler's declaration has been construed as asserting a request by him to discover the names of the "authorities" relied upon for the purpose of contravening Wagoner's statements with regard to them, and not merely for the purpose of discovering whether they were legal authorities.

subdivision 3, may, for the purpose of establishing that he had probable cause to believe that the allegedly libelous statement was true, rely upon information received from persons whose names he has refused to reveal.

A significant analogy is provided, however, by the decision of this court in *Priestly* v. *Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39]. In that case, the prosecution attempted to establish probable cause by the testimony of an arresting officer who acted solely on information supplied by two unnamed informers. The defendant sought to ascertain the names of the informers, and the prosecution claimed that it had a right to withhold the names under the provisions of section 1881, subdivision 5, of the Code of Civil Procedure, which states, ''A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure.'' We held that the defendant was entitled to ascertain the informers' names or to have the testimony relating to their statements stricken, stating (at p. 818): ''If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore he permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. If an officer were allowed to establish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue.''

Although this is a civil proceeding, the same reasoning may be applied here with perhaps more convincing logic. In the instant case the party withholding the identification of the informers is not a peace officer who is seeking to encourage the free flow of information helpful to enforcement of the law, but a corporation in the business of supplying credit information for pecuniary gain. It would be grossly unjust to permit a defendant, in the pursuit of his commercial in-

terests, to rely upon the special privilege granted by section 47, subdivision 3, without requiring him to disclose information in his possession necessary to determine whether the statements were made without malice. Defendants cannot require a court to accept their *ipse dixit* assertion of good faith, particularly on motion for summary judgment.

Defendants argue that the statements made in their declarations in support of the motion to the effect that they bore no malice toward plaintiffs are uncontroverted because plaintiffs, in their opposing declarations, did not assert that defendants were actuated by malice, and the allegations in the complaint cannot be employed to fill this gap. (See *Coyne v. Krempels* (1950) *supra,* 36 Cal.2d 257.) In his declaration in opposition to the motion Hasler states that, because defendants refused to disclose the names of the four credit managers referred to in Wagoner's declaration, Hasler was unable to ''specifically deny the same or to offer evidence controverting such allegations.'' Construing his counterdeclaration liberally, as we must, Hasler has in effect claimed that defendants' refusal to disclose the names prevented plaintiffs from contravening Wagoner's assertion of good faith reliance on the statements of the credit managers. Section 437c of the Code of Civil Procedure requires that the affidavit opposing a motion for summary judgment shall set forth facts ''within the personal knowledge of the affiant . . . and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto. . . .'' In view of these requirements, it is difficult to conceive what Hasler could have done by way of alleging malice other than to state in effect that defendants, by failing to disclose the names of the persons upon whom they relied, prevented him from ascertaining the information needed to support such a charge. Defendants cannot assert with propriety that the declarations opposing the motion are insufficient, when the insufficiency is compelled by their own evasion.

Defendants rely upon *Coyne* v. *Krempels* (1950) *supra,* 36 Cal.2d 257, which they assert holds that an affidavit in support of a motion for summary judgment need not set forth the names of persons whose statements are relied upon as a ''basis for affirmative relief.'' Although, according to the opinion of the District Court of Appeal superseded by our decision in that case (*Coyne* v. *Krempels* (Cal.App.) 218 P.2d 125, 127), the affidavit of the plaintiff there alleged that he had an ''unnamed prospect [as a buyer for a bus],'' this court,

in holding that the plaintiff's affidavit was sufficient to entitle him to summary judgment, did not allude to the question of the identity of the asserted buyer either in the facts or in the discussion of the law. The contention that this holding amounts to an acceptance of the view that defendants may rely on information supplied by unidentified persons to controvert the allegations of malice is, of course, totally untenable. The Michigan case of *Trimble* v. *Morrish* (1908) 152 Mich. 624 [116 N.W. 451, 16 L.R.A. N.S. 1017], is also relied upon by defendants. The court there held that malice could not be inferred because of the defendant's refusal to name his informant, stating that this is the course a high-minded person would have taken. The case is distinguishable because there is no indication that Michigan law a half century ago permitted malice to be inferred from a lack of probable cause.

There are other triable issues of fact claimed by plaintiffs to be raised by the declarations, but they will not be discussed herein because they can be determined at a trial on the merits. (See *Eagle Oil & Ref. Co.* v. *Prentice,* (1942) *supra,* 19 Cal.2d 553, 559; *Miller & Lux, Inc.* v. *Bank of America* (1963) 212 Cal.App.2d 719, 724 [28 Cal.Rptr. 401].)

The fourth, fifth and sixth causes of action are based on the same facts as the first three, but it is alleged that defendants published and distributed the reports negligently and recklessly and that with reasonable care the facts could have been stated correctly and fairly. The concept of negligence is inherent in the issue of probable cause, and therefore the fourth, fifth and sixth causes are governed by what has been said above insofar as they alleged that the reports were compiled negligently. The questions of negligent distribution is related to whether defendants exceeded the privilege of Civil Code section 47, subdivision 3, by distributing the publications to persons other than those interested within the meaning of the section and is one of the factual matters which are to be determined at trial.

The judgment is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., and Burke, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Justice Lillie in the opinion prepared by her for the District Court of Appeal in *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (Cal.App.) 40 Cal.Rptr. 146.