[Civ. No. 62842. Second Dist., Div. Five. Mar. 17, 1983.]

C. I. ENGINEERS & CONSTRUCTORS, INC.,
Cross-complainant and Respondent, v.
JOHNSON & TURNER PAINTING COMPANY, INC.,
Cross-defendant and Appellant.

1012

■■■■■■

**COUNSEL**

Haight, Dickson, Brown & Bonesteel, George C. McCarthy, Roy G. Weatherup and Christopher M. Gilman for Cross-defendant and Appellant.

Coyle, Marrone & Robinson and J. Alan Frederick for Cross-complainant and Respondent.

**OPINION**

**EAGLESON, J.\***—C. I. Engineers & Constructors, Inc., defendant, cross-complainant and respondent (hereinafter referred to as cross-complainant or contractor), sought contract indemnity against Johnson & Turner Painting Company, Inc., cross-defendant and appellant (hereinafter referred to as cross-defendant or subcontractor). The trial court granted cross-complainant's motion for a summary judgment on the issue of liability under an indemnity clause found in a written construction contract entered into between cross-complainant and cross-defendant. Following a court trial on the issue of damages a money judgment was entered in favor of cross-complainant against cross-defendant, and this appeal follows. (The damages were those paid by cross-complainant to Davis for personal injury.)

The issue is whether in light of admitted facts the court correctly interpreted the written indemnity clause as one raising an issue of law only or whether the clause, and the right to indemnity thereunder, could be interpreted only after a determination of triable issues of fact, thus precluding summary judgment. We affirm.

**FACTS**

Davis, the injured party and trial court plaintiff, was a foreman for cross-defendant who was acting as a painting subcontractor on a construction job. Cross-complainant was the general contractor.

In support of a motion for summary judgment and claim for indemnity, cross-complainant submitted declarations, deposition excerpts, answers to interrogatories, requests for admissions which because they remained unanswered were deemed admitted, and a second set of requests for admissions and answers thereto. Collectively, they clearly established that Davis was negli-

*Assigned by the Chairperson of the Judicial Council.

gent in respect of the incident in which he was injured, that his negligence was a proximate cause of his injury, and that at the time of the incident he was an employee of cross-defendant and acting in the course and scope of his employment.

It was also conceded below that cross-complainant was negligent, but no determination was made whether its negligence was active or passive. We have then a case of co-negligence of both the indemnitor (subcontractor) and indemnitee (contractor).

The written contract provision which is the basis of the claim reads:

" 'B. INDEMNITY. All work covered by this Agreement done at the site of construction or in preparing or delivering materials to the site shall be at the risk of SUBCONTRACTOR alone. SUBCONTRACTOR agrees to save, indemnify and keep harmless CONTRACTOR against any and all liability, claims, judgments, or demands, including the obligations of CONTRACTOR on account of any similar agreement CONTRACTOR has with OWNER, including demands arising from injuries or death of persons (SUBCONTRACTOR's employees included) and damage to property, arising directly or indirectly out of the obligations herein undertaken or out of the operations conducted by SUBCONTRACTOR, save and except claims or litigation arising through the sole negligence or sole willful misconduct of CONTRACTOR, and will make good to and reimburse CONTRACTOR for any expenditures, including reasonable attorneys' fees, CONTRACTOR may make by reason of such matters and, if requested by CONTRACTOR, will defend any such suits at the sole cost and expense of SUBCONTRACTOR.' "

## DISCUSSION

The trial court found that this clause was a "Type I" provision which allows indemnity for damages arising out of any type of negligence, including active negligence of the indemnitee. If the clause is of this type, a qualitative determination that the negligence was active or passive is irrelevant.

Cross-defendant contends that the indemnity agreement was of a "Type II" or "general indemnity" variety precluding summary judgment because ultimate liability can be allocated only if the indemnitee cross-complainant (contractor) is factually found to be passively and not actively negligent, and since no such finding was made, summary judgment is improper.

The rubrics "Type I" and "Type II" stem from a classification model articulated by this court in *MacDonald & Kruse, Inc.* v. *San Jose Steel Co., Inc.* (1972) 29 Cal.App.3d 413 [105 Cal.Rptr. 725]. But since the legal principles

governing written express indemnity reflect its contractual nature the inquiry should be focused on what the parties intended in the circumstances of their own agreement.

" 'Past cases have held that an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. [Citation.] If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a "general" indemnity clause. [Citations.] While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. [Citation.] Provisions purporting to hold an owner harmless "in any suit at law" [citation], "from all claims for damages to persons" [citation], and "from any cause whatsoever" [citation], without expressly mentioning an indemnitee's negligence, have been deemed to be "general" clauses.' " (*Guy F. Atkinson Co.* v. *Schatz* (1980) 102 Cal.App.3d 351, 356-357 [161 Cal.Rptr. 436].)

The indemnity clause here does address itself to the issue of indemnitee's negligence and is not therefore a "general" indemnity clause. Cross-complainant contractor sought indemnity against *any and all* liability, claims, judgments or demands, which was further refined to include "demands arising from injuries or death of persons (SUBCONTRACTOR's employees included) . . . arising directly or indirectly out of the obligations herein undertaken or out of the operations conducted by SUBCONTRACTOR," (obviously the job site activities of Davis, subcontractor's agent, acting in the course and scope of his employment at the time of his injury), "*save and except claims or litigation arising through the sole negligence or sole willful misconduct of* CONTRACTOR . . . ." (Italics added.) If we assume that the all encompassing phrase "any and all" is unclear or not explicit it becomes unambiguous when highlighted against the contractual limitation later alluded to in the indemnity clause, that is, that the contractor was not to be indemnified for claims or litigation arising through its sole negligence or sole wilful misconduct.

It is true that Civil Code section 2782 renders void as against public policy any provision in a construction contract which seeks to provide indemnity against the "sole negligence or willful misconduct of the promisee," but it does not follow, as suggested by appellant, that the inclusion of that phrase in the indemnity clause is simply an effort to comply with the statute.

■ " ' "[T]he laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." ' " (*United States Trust Co.* v. *New Jersey*

(1976) 431 U.S. 1, 19-20 [52 L.Ed.2d 92, 108, 97 S.Ct. 1505]; *Home Bldg. & L. Assn.* v. *Blaisdell* (1934) 290 U.S. 398, 429-430 [78 L.Ed. 413, 423-424, 54 S.Ct. 231, 88 A.L.R. 1481].)  ██  In order to be afforded any meaning at all, the inclusion of this phrase in the indemnity clause must necessarily quantify the scope of cross-defendant subcontractor's responsibility, that is, to indemnify against any and all liability arising out of job related activity except that occasioned by the sole negligence or sole wilful misconduct of cross-complainant.

Put differently, is there a legally significant semantic distinction between saying "I expect to be indemnified against any and all claims arising out of job related injuries, including those arising from my negligence" and "I expect to be indemnified against any and all claims arising out of job related injuries, except those attributable to my sole negligence?" We think not.

The appellate court considered the qualitative contours of each parties' negligence in *Guy F. Atkinson Co.* v. *Schatz, supra,* 102 Cal.App.3d at pages 358-359: "But even if respondent [subcontractor] could be said to be negligent on these facts, as appellant [contractor] contends, its negligence consisted at most in the fact that its two employees on the job performed their work in an area exposed to a dangerous condition created by appellant. We find no reported California case which has upheld indemnification in such a situation. To read the agreement as providing for indemnity in such a situation would come very close to providing indemnity for the 'sole negligence' of the indemnitee in situations where the indemnitee's negligence consists of creating a hazardous condition of the job." In *Atkinson* there had been a court trial and factual findings.[1] In our case, because of the summary judgment ruling, there was no trial because the operative facts were uncontroverted. What we have here, as a matter of law, are a negligent cross-complainant indemnitee and a conegligent cross-defendant indemnitor.

██  Appellant contends that the admitted negligence of Davis cannot be imputed to his employer, and therefor, the subcontractor employer, not otherwise negligent, is not responsible under the indemnity clause. He cites *Kemerer* v. *Challenge Milk Co.* (1980) 105 Cal.App.3d 334 [164 Cal.Rptr. 397] for this proposition. In *Kemerer* plaintiff sued a defendant for personal injury. At trial the jury found defendant 70 percent at fault and plaintiff 30 percent at fault in causing her injury. Because her injury was job related, plaintiff-in-intervention, plaintiff's employer's compensation carrier, filed a complaint for reimbursement by way of subrogation. Plaintiff was awarded $25,000 in addition to her previously received compensation benefits. This was reduced by $7,500 because of her 30 percent comparative negligence, resulting in a net recovery

---

[1]The appellate court noted that the trial court declined to make a requested finding that the two employees were actively negligent.

of $17,500. The interveners were awarded $18,860.50, the full amount paid in compensation benefits to plaintiff.

Defendants appealed contending that the court erred in not permitting the imputation of plaintiff employee's negligence to the otherwise nonnegligent employer. In rejecting this argument, the court reasoned, at page 338: "Defendant's contention is untenable because by imputing plaintiff-employee's negligence to her employer, the damages assessed against the third party tortfeasor would be reduced *twice* contrary to the principle of comparative fault. Defendants would first reduce the total award by plaintiff-employee's comparative fault. Secondly, by using the employee's negligence imputed to her employer, they would reduce the amount of recovery by plaintiffs-in-intervention."

*Kemerer* has no application to the facts at bench. Here, the legal obligation of the indemnifying subcontractor, if any, is predicated upon express contract indemnity and not upon the application of the comparative fault doctrine which springs from common law tort principles. (*Li* v. *Yellow Cab Co.* (1979) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

In *Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 414 [340 P.2d 604], a written indemnity clause read: "Contractor hereby releases and agrees to indemnify and save Railroad harmless from and against any and all injuries to and deaths of persons, claims, demands, cost, loss, damage and liability, however same may be caused, resulting directly or indirectly from the performance of any or all work to be done upon the property and beneath the tracks of Railroad and upon the premises adjacent thereto under said agreement between District and Contractor, also from all injuries to and deaths of persons, claims, demands, cost, loss, damage and liability, howsoever same may be caused either directly or indirectly, made or suffered by said Contractor, Contractor's agents, employees and subcontractors, and the agents and employees of such subcontractors, while engaged in the performance of said work."

The question was whether such an indemnity clause operates to exculpate the defendant railroad from the consequences of its own negligence where the clause does not expressly state that damage caused by the defendant's negligence is intended to be included in the coverage of the clause. The court held: "It would appear that 'to be sufficient as an exculpatory provision against one's own negligence, the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties.' [Citation.] The language of the present clause, prepared on behalf of the defendant railroad, falls short of so expressing the defendant's intention to exculpate itself. . . . 'The defendant itself wrote the provision into the contract for its own benefit. It could have plainly stated, if such was the understanding of the parties, that the plaintiff agreed to relieve it in the matter from all liability for its

own negligence. As it did not do so, we resolve all doubt, as we should, in favor of the plaintiff, and hold that it was not the intent of the parties to give to the contract as written the effect claimed by the company.' " (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d at pp. 414, 415.)

To require that an express indemnity clause be cast in the rote form suggested by *Vinnell* is to compel contracting parties to lie upon a procrustean bed of linguistic formalism that inhibits the clear meaning of plain English.

■ We hold that a contractor who seeks indemnity against any and all liability, claims, judgments or demands, including demands arising from injuries or death of the subcontractor indemnitor's employees, arising directly or indirectly out of the indemnitor's obligations undertaken and that arise out of the contract, save and except claims or litigation arising through the sole negligence or sole wilful misconduct of contractor indemnitee is in sum and substance the same idea as would be conveyed if the indemnitee contracted to be indemnified against any and all liability including its own acts of negligence (except of course its sole negligence or sole wilful misconduct prohibited by Civ. Code, § 2782).

In *John E. Branagh & Sons* v. *Witcosky* (1966) 242 Cal.App.2d 835 [51 Cal.Rptr. 844] the parties litigated the meaning of an indemnity clause almost identical to the one in the case at bench. However, the sole contention on appeal (*id.*, at p. 837) was that the clause was against public policy and therefore unenforceable. No contention was made or argument addressed to the question whether the indemnity provision was sufficiently clear to encompass the right to indemnity where there was conegligence of both indemnitor and indemnitee. Thus, the case is not authority for the court's determination herein.

Under the admitted facts the court found that this was a case of conegligence. In view of our holding that the indemnity clause allows recovery by cross-complainant under these facts, no triable issue of fact remains respecting the passive or active nature of cross-complainant's negligence, and the summary judgment was properly granted.

The judgment on the cross-complaint is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

On April 14, 1983, the opinion was modified to read as printed above.