[No. H005437. Sixth Dist. June 22, 1990.]

SANDRA SLIVINSKY, Plaintiff and Appellant, v.
WATKINS-JOHNSON COMPANY et al., Defendants and
Respondents.

COUNSEL

Harold D. Caplener for Plaintiff and Appellant.

Mark G. Bonino and Robert P. Andris for Defendants and Respondents.

OPINION

COTTLE, J.—In this wrongful termination action, the trial court granted defendant employer's motion for summary judgment as to all seven causes of action in plaintiff's complaint. Plaintiff contends that material questions of fact exist as to four causes of action (breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and invasion of privacy) and consequently the court erred in granting summary judgment. We conclude, as a matter of law, that plaintiff has failed to state any cause of action against her former employer because the parties' written employment contract defines her employment as at-will. Accordingly, we shall affirm.

FACTS

In July 1984 plaintiff Sandra Slivinsky was employed as a technical project engineer with General Electric Company at an annual salary of $39,600. That month, she applied for a job with Watkins-Johnson Company, a large aerospace manufacturer. Directly above the signature line on the application she signed was the statement: "I understand that employment by WATKINS-JOHNSON COMPANY is conditional upon . . . execution of an Employee Agreement. . . . I further understand that if I become employed by Watkins-Johnson Company, there will be no agreement expressed or implied, between the company and me for any specific period of employment, nor for continuing or long term employment."

Over the next several months, according to Watkins-Johnson's "History Record," the company contacted Slivinsky's references, requested her transcripts, and set up a series of interviews. Slivinsky claims that at these interviews she was promised "long term," "indefinite," and "permanent" employment, not subject to business cycles. The company took an offer package to Louis Dombro, Slivinsky's future supervisor, on November 6, 1984, and on November 30, she accepted a position in the space support equipment subdivision of the space communication department. Her anticipated starting date was January 7, 1985, and her initial salary was $45,760 per year.

Since at least early November, Watkins-Johnson had been negotiating a new contract with NASA-Lewis for the development of TWT's (tubes) to be used as telemetry and communications links for the space program. Watkins-Johnson had worked on a number of projects for NASA-Lewis since the mid-1960's, including developing S-Band and X-Band TWT's for use on the Pioneer mission to Jupiter in 1972, the Viking, Voyager, and Helios missions, and the space shuttle program. On December 6, 1984, Dombro noted on page two of a letter to NASA-Lewis that "we have recently hired a materials scientist with a Ph.D from Stanford and broad experience in the nuclear industry. Her name is Dr. Sandra Slavinsky [*sic*] and we hope to eventually form a materials group under her guidance. One of her tasks will be to look into the area of pyrolytic graphite and I'm sure that she will be making trips to NASA-Lewis in the near future."

Slivinsky sent a formal letter of acceptance to the company on December 16, 1984, and reported for work, as agreed upon, on January 7, 1985. On that day, she signed the employee agreement which had been referred to in her application to Watkins-Johnson ("I understand that employment by Watkins-Johnson Company is conditional upon . . . execution of an Employee Agreement"). The last paragraph of the employee agreement, which was set apart from the body of the document and written in bold type, provided: "Employee acknowledges that there is no agreement, express or implied, between employee and the Company for any specific period of employment, nor for continuing or long-term employment. Employee and the Company each have a right to terminate employment, with or without cause."

As a result of the space shuttle Challenger disaster in January 1986, Watkins-Johnson experienced significant business losses and government contract cancellations. The management decided that a manpower cutback was essential to cope with the loss of business. Ultimately, 26 employees were selected for the reduction in force program, including Slivinsky, 14 members of her division, and 4 members of her department. Watkins-Johnson terminated her employment on June 20, 1986.

Slivinsky claims that the reasons given for her termination were pretextual, that the real reason was that Louis Dombro had overrun his department's budget and wanted to reduce costs by firing her, that he disliked her, did not communicate well with her, and was unaware of the reduction in force program when he made his decision to terminate her employment.

STANDARD OF REVIEW

■ Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing

papers, they are reviewed independently on appeal, applying the same three-step analysis required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) First, we identify the issues framed by the pleadings since the motion and opposition must be addressed to those issues. Second, we determine whether the moving party has met its burden of proof by negating any triable issue of fact as to the opponent's claims or defenses. Third, if the moving party has met its burden of proof, we determine whether the opposing party has demonstrated the existence of a triable, material factual issue. (*Ibid.*) Any "doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

## DISCUSSION

In her first and second causes of action, Slivinsky alleges that Watkins-Johnson breached its employment contract and breached its duty of good faith and fair dealing by terminating her employment "in an arbitrary, pretextual, and improper manner" "without cause and for reasons that have nothing to do with legitimate business justification" in violation of the parties' "express and implied in fact employment agreement" that she "would be able to continue her employment with defendants indefinitely so long as she carried out her duties in a proper and competent manner." She claims that during prehire interviews, she was assured that her employment would be "long-term," "indefinite," and "permanent," independent of business fluctuations, and subject only to termination for cause.

On appeal, Slivinsky claims that the evidence is disputed as to the parameters of the parties' employment agreement—Slivinsky arguing that it includes factors such as the duration of plaintiff's employment, promotions received, lack of criticism, oral assurances of job security and Watkins-Johnson's personnel policies and practices not to terminate employees except for good cause; Watkins-Johnson arguing that it is limited to the parties' express written contract defining the employment as at will.

■ The dispositive issue, therefore, is whether we can look beyond the four corners of the parties' written agreements to ascertain the complete agreement of the parties. The answer to that question involves application of the parol evidence rule, a rule of substantive law precluding the introduction of evidence which varies or contradicts the terms of an integrated written instrument. If the parties intended that the application and employment agreement constituted an integration, i.e., the "final expression of their agreement with respect" to grounds for termination, then those agreements "may not be contradicted by evidence of any prior agreement or of a

contemporaneous oral agreement." (Code Civ. Proc., § 1856, subd. (a); *Gerdland* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279].)

■ Whether the agreement is an integration is a question of law for the judge. (*Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 146 [124 Cal.Rptr. 845].) "The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein . . . ." (Code Civ. Proc., § 1856, subd. (d).) Additionally, "No particular form is required for an integrated agreement." (Rest.2d Contracts, § 209, com. b.) ■ "When only part of the agreement is integrated, the [parol evidence] rule applies to that part . . . ." (*Masterson* v. *Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561].) ■ "If a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.]" (*Bert G. Gianelli Distributing Co.* v. *Beck & Co.* (1985) 172 Cal.App.3d 1020, 1037, fn. 4 [219 Cal.Rptr. 203].)

■ Applying these standards, we conclude that the contract was integrated with respect to the grounds for termination. Slivinsky's employment application specifically conditioned employment upon execution of an employee agreement. It further provided that if Slivinsky were to become employed by Watkins-Johnson, there "*will be no agreement expressed or implied,* between the Company and [Slivinsky] for any specific period of employment, nor *for continuing or long term employment.*" When Slivinsky executed the employee agreement, she acknowledged "that there *is no agreement, express or implied,* between employee and the Company for any specific period of employment, nor *for continuing or long-term employment. Employee and the Company each have a right to terminate employment, with or without cause.*" (Italics added.)

Reading these documents together, the only reasonable conclusion that can be drawn is that the parties intended that there *would be no other agreement* regarding termination *other than* that set forth in the employee agreement, i.e., that employment was terminable at the will of either party, with or without cause. Slivinsky's reliance on our opinion in *McLain* v. *Great American Ins. Companies* (1989) 208 Cal.App.3d 1476 [256 Cal.Rptr. 863] is thus misplaced because in that case the parties contractually agreed that their relationship would remain subject to change in terms and conditions. In *McLain,* therefore, the employment contract did not constitute the *final* embodiment of the party's intentions. Here, in contrast, the parties intended the application and employee agreement to memorialize their understanding with respect to grounds for termination. Consequently,

"evidence of an implied agreement which contradicts the terms of the written agreement is not admissible. 'There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.' [Citation.]" (*Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 316 [231 Cal.Rptr. 820]; see also *Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1226 [261 Cal.Rptr. 185]; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 855 [268 Cal.Rptr. 550].)

Because we hold that the contract is a contract for employment terminable at will, we do not reach the issues regarding whether good cause existed for Slivinsky's termination based on Watkins-Johnson's decision to reduce its work force. ■ Even if the reduction in force were a pretextual ground for terminating Slivinsky's employment, it would not be actionable with an at-will employment contract unless " 'the employer's motivation for [a] discharge contravenes some substantial public policy principle . . . .' " (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 177 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314].) No such public policy violation is alleged here.

For the same reason, we hold that Slivinsky's claim for breach of the implied covenant of good faith and fair dealing must fail. ■ The covenant is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 683-684 [254 Cal.Rptr. 211, 765 P.2d 373].) ■ Here the parties agreed that their relationship was terminable at will. Therefore, "terminating an employee without good cause does not deprive the employee of the benefits of the agreement." (Kuenzel, Employment "At Will," Employers at Risk: Managing the Challenges of Firing Decisions In the Post-*Foley* Era (Prentice Hall 1989) p. 23; see also *Gerdland* v. *Electronic Dispensers International, supra,* 190 Cal.App.3d at p. 270 [Covenant cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract].)

■ In her fourth cause of action for fraud and deceit, Slivinsky alleges that Watkins-Johnson "falsely and fraudulently represented to plaintiff and other persons that plaintiff's skills, credentials, knowledge, background, and expertise would be utilized as a materials scientist in connection with the proposed contract between NASA-Lewis and WATKINS, that plaintiff would become the head of a materials science group at Watkins, and that plaintiff would have continuous and indefinite employment with WATKINS, and that plaintiff would work on the contract between NASA-Lewis and WATKINS for a continuous and indefinite term." In light of our holding on the breach of contract and breach of the covenant of good faith and fair

dealing causes of action, it is clear that Slivinsky's cause of action for fraud must likewise fail. Until she was discharged, she did work on the NASA-Lewis contract as a materials scientist. More importantly, her alleged reliance on Watkins-Johnson's oral promises of continuing employment is simply not justifiable because the representations contradict the parties' integrated employment agreement which provided that the employment was at will. (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 482 [199 Cal.Rptr. 613], criticized on other grounds in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 688 and *Dabbs* v. *Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437, 1443 [234 Cal.Rptr. 129].) Justifiable reliance is a necessary element of a cause of action for fraud. (*Shurpin* v. *Elmhirst* (1983) 148 Cal.App.3d 94, 101 [195 Cal.Rptr. 737].)

In her seventh cause of action, Slivinsky alleges that the letter her supervisor wrote to NASA-Lewis without her knowledge after she accepted employment, but before she began working, constituted an actionable invasion of privacy based on misappropriation of name. The elements of a common law cause of action for misappropriation of name may be pleaded by alleging "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury. [Citations.]" (*Eastwood* v. *Superior Court* (1983) 149 Cal.App.3d 409, 417 [198 Cal.Rptr. 342].)

"In addition, to plead the statutory remedy provided in Civil Code section 3344, there must also be an allegation of a knowing use of the plaintiff's name . . . for purposes of advertising or solicitation of purchases. [Citation.] Furthermore, recent judicial construction of section 3344 has imposed an additional requirement. A 'direct' connection must be alleged between the use and the commercial purpose. [Citation.]" (149 Cal.App.3d at pp. 417-418.)

We agree with the trial court that plaintiff failed to allege facts sufficient to constitute this cause of action. Specifically, Slivinsky failed to allege how this truthful and laudatory statement to Watkins-Johnson's long-time contractor resulted in any injury to her. The only evidence in the record suggests that Dombro proudly showed her the letter when Slivinsky first arrived at work. Resulting injury is the sine qua non of a cause of action for misappropriation of name. Indeed, "the gist of the cause of action for invasion of privacy is for direct wrongs of a personal character which result in injury to the plaintiff's feelings . . . ." (Annot., Name Appropriation by Employer (1987) 52 A.L.R.4th 156, § 2[a], p. 161.)

We find as a matter of law that Slivinsky has failed to state any cause of action against her former employer, Watkins-Johnson.

The judgment is affirmed.

Agliano, P. J., and Bamattre-Manoukian, J., concurred.