[No. D010796. Fourth Dist., Div. One. Nov. 8, 1990.]

SARA HOHE, a Minor, etc., Plaintiff and Appellant, v.
SAN DIEGO UNIFIED SCHOOL DISTRICT, Defendant and
Respondent;
MISSION BAY HIGH SCHOOL PARENT, TEACHER AND
STUDENT ASSOCIATION, Defendant and Appellant.

## COUNSEL

Robert P. Irwin for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, Peter L. Garchie and Philip A. Book for Defendant and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre and Steven J. Cologne for Defendant and Respondent.

## OPINION

**LIM, J.\***—Plaintiff Sara Hohe (Hohe), a minor, by her guardian ad litem, Steven Hohe, appeals after the court granted summary judgment in favor of defendants San Diego Unified School District (School District) and Mission Bay High School Parent, Teacher and Student Association (PTSA). The court found the releases signed by Hohe and Steven Hohe on his daughter's behalf barred her personal injury lawsuit. Hohe contends the court erred because the releases are contrary to public policy, unenforceable because of her minority and unenforceable because of fraud in the inducement. She also argues the written release did not clearly notify her or her parent of its effect. We conclude a triable issue of fact exists regarding the releases' scope and effect. We therefore reverse the judgment. Accordingly, PTSA is not entitled to attorney fees or costs.

### FACTS

Hohe, a 15-year-old junior at Mission Bay High School in San Diego, was injured during a campus hypnotism show sponsored by the PTSA as a fund-

_____

\* Assigned by the Chairperson of the Judicial Council.

raiser for the senior class. Hypnotism shows had been held annually since 1980.

Hohe was one of 18 or 20 subjects selected at random from a group of many volunteers. Her participation in the "Magic of the Mind Show" was conditioned on signing two release forms. Hohe's father signed a form entitled "Mission Bay High School PTSA Presents Dr. Karl Santo."[1] Hohe and her father both signed a form entitled "KARL SANTO HYPNOTIST." [2]

Hohe saw the prior year's hypnotism show. She explained to her father that it would be fun, the show was popular and discussed at least one previous stunt where a subject was suspended between two objects while another person stood on the subject's stomach. She also said people sang.

During the course of the show, Hohe slid from her chair and also fell to the floor about six times.

DISCUSSION

I

■ Hohe argues the releases she and her father signed are contrary to public policy. We disagree. "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." (*Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]; *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 598 [250 Cal.Rptr. 299]; see *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 343 [214 Cal.Rptr. 194] [parachuting]; *Kurashige* v. *Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606, 612 [246 Cal.Rptr. 310] [dirt biking].)

---

[1] The release form read as follows: "CAUTION [¶] Children with any mental disorder or of a nervous disposition are not allowed to participate. A portion of the program occasionally contains adult theme; parental discretion is advised.

"SUBJECTS ARE REQUIRED TO ARRIVE AT 6:30 p.m.

"My son/daughter Sarah Hohe, grade 11 has my permission to be hypnotized by Dr. Karl Santo during his program at Mission Bay High School. I waive all liability against the PTSA, its members, Mission Bay High School, and the San Diego Unified School District."

[2] The form read in part: "I agree to indemnify and hold you and any third parties harmless from any and all liability, loss or damage (including reasonable attorney fees) caused by or arising in any manner from my participation in the Magic of the Mind Show including any utterances made by me during the above named show or material furnished by me in connection with my participation in the show. I am solely responsible for my appearance in the show and for any loss to any party arising therefrom. [¶] I acknowledge that I am not receiving any compensation from my participation or the above authorization; and that you are relying on the above understandings in your use and broadcasting of my participation and in the production and promotion of the Magic of the Mind Show."

An attempted but invalid exemption from liability "involves a transaction which exhibits some or all of the following characteristics. It concerns a business of a type generally thought suitable for public regulation. The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services." (*Tunkl* v. *Regents of University of California, supra*, 60 Cal.2d at pp. 98-100, fns. omitted.)

The circumstances here present an entirely different situation. Hohe volunteered to be part of a PTSA activity because it would be "fun." There was no essential service or good being withheld by PTSA. Hohe, like thousands of children participating in recreational activities sponsored by groups of volunteers and parents, was asked to give up her right to sue. The public as a whole receives the benefit of such waivers so that groups such as Boy and Girl Scouts, Little League, and parent-teacher associations are able to continue without the risks and sometimes overwhelming costs of litigation. Thousands of children benefit from the availability of recreational and sports activities. Those options are steadily decreasing—victims of decreasing financial and tax support for other than the bare essentials of an education. Every learning experience involves risk. In this instance Hohe agreed to shoulder the risk. No public policy forbids the shifting of that burden.

## II

■ Hohe also argues the release from liability cannot be enforced against her because she is a minor. The permission and waiver forms were signed on her behalf by her parent. Hohe also signed one of the release documents.

It is true, with certain limited exceptions, a minor can disaffirm his or her contract. Civil Code section 35 provides, in relevant part, "the contract of a minor may be disaffirmed by the minor himself, either before his majority or within a reasonable time afterwards . . . ." (*Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606, 609 [43 Cal.Rptr. 697, 401 P.2d 1].) The purpose of Civil Code section 35 is to protect the minor from his own improvidence. It is often said, "he who affirmatively deals with a minor, does so at his peril." (*Holland* v. *Universal Underwriters Ins. Co.* (1969) 270 Cal.App.2d 417, 422 [75 Cal.Rptr. 669].) However, the releases signed here were signed on

Hohe's behalf by her parent. A parent may contract on behalf of his or her children. Civil Code section 35 was not intended to affect contracts entered into by adults on behalf of their children. (*Doyle* v. *Giuliucci, supra*, 62 Cal.2d at p. 609.) The court in *Celli* v. *Sports Car Club of America, Inc.* (1972) 29 Cal.App.3d 511, 517 [105 Cal.Rptr. 904], found a release signed by a nine-year-old invalid because, among other reasons, the minor's signature was the only signature on the release. We therefore hold Hohe cannot disaffirm the release based on her minority.

### III

▮ Hohe also attacks the release based on fraud because the permission form bore the heading "Mission Bay High School PTSA Presents Dr. Karl Santo." It was undisputed the hypnotist was not a medical doctor. Hohe and her father signed a second release form which was simply captioned "KARL SANTO HYPNOTIST." The question facing the court was whether a material and triable factual issue existed based on the alleged fraudulent content of the release. We think not.

A motion for summary judgment shall be granted if all the papers submitted show there is no triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c); *Slivinsky* v. *Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 804 [270 Cal.Rptr. 585].) ▮ The necessary elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762 P.2d 46].) ▮ The record before us does not disclose evidence which creates a triable and material issue of fact. Use of the title "Dr." did not falsely represent the hypnotist as a medical doctor or show PTSA intended such a representation. There is also no evidence PTSA intended to induce reliance or Hohe justifiably relied in any way. Hohe has not presented a triable issue of fact on the question of fraud to defeat the summary judgment.

### IV

▮ The more troublesome issue before us is the scope and effect of the release forms. ▮ Hohe contends the executed forms do not clearly and unequivocally release School District and PTSA from liability for negligence.

"[T]o be effective, an agreement which purports to release, indemnify or exculpate the party who prepared it from liability for that party's own

negligence or tortious conduct must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 318 [195 Cal.Rptr. 90]; *Madison* v. *Superior Court, supra*, 203 Cal.App.3d at p. 598; *Celli* v. *Sports Car Club of America, Inc., supra*, 29 Cal.App.3d at pp. 518-519.)

The permission form signed by Steven Hohe "waive[d] all liability against PTSA, its members, Mission Bay High School, and the San Diego Unified School District." The form began with precautionary language stating children with mental disorders or of a nervous disposition were not allowed to participate. The parent was advised to exercise parental discretion because the anticipated program might contain an adult theme. The additional form signed by both Hohe and her father stated "I agree to indemnify and hold you and any third parties harmless from any and all liability, loss or damage (including reasonable attorney fees) caused by or arising in any manner from my participation in the Magic of the Mind Show . . . ." This second document signed at the same time as the permission form granted Karl Santo the authority to broadcast and record Hohe's performance and to use her name and likeness for promotional purposes. It also specifically indemnified Santo from any liability due to Hohe's utterances while participating in the show.

A valid release must be simple enough for a layperson to understand and additionally give notice of its import. A drafter of such a release faces two difficult choices. His Scylla is the sin of oversimplification and his Charybdis a whirlpool of convoluted language which purports to give notice of everything but as a practical matter buries its message in minutiae.

In *Celli* v. *Sports Car Club of America, Inc., supra*, 29 Cal.App.3d at page 525, appendix, a release printed on the back of a race car pit pass in six point type attempted to "[release, remise and forever discharge] from any and every claim, demand, action or right of action whatsoever kind or nature, in law or in equity, arising from or by reason of any injury to or death of any person, . . . resulting or alleged to result from or arise out of any accident or other occurrence during or in connection with the foregoing event and/or any practice session in connection therewith, and/or any use of the course and/or facilities provided for such event." The *Celli* court found the release invalid.

In *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd., supra*, 147 Cal.App.3d at page 319, a release consisting of a convoluted 147-word

sentence contained no releasing words such as " 'release,' 'remise,' 'discharge,' 'waive' or the like." The *Ferrell* court found the release invalid.

■ The question here is whether the release and waiver language in the documents signed by Hohe and her father exculpates PTSA and School District from the consequences of its own breach of duty.

A line of cases exists suggesting a release to be effective against "active" negligence must specifically refer to "negligence" in the language of the contract. In other words, a general release will not protect a party from liability unless the negligent acts are ones of nonfeasance or "passive" negligence. (*Vinnell Co.* v. *Pacific Elec. Ry. Co.* (1959) 52 Cal.2d 411, 415 [340 P.2d 604]; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129]; *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 422 [105 Cal.Rptr. 725].)

However, an analysis based on the "active-passive dichotomy" or on the absence or presence of a specific reference to "negligence" is not dispositive. (See *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 632 [119 Cal.Rptr. 449, 532 P.2d 97].) ■ "[I]t is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where . . . the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself." (*Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445, 449 [6 Cal.Rptr. 284, 353 P.2d 924] distinguishing *Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* at p. 415.) Whether a release bars recovery against a negligent party "turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d at p. 633.)

■ The permission form signed by Hohe's father and the additional indemnification and "hold harmless" form signed by both Hohe and her father are general releases. There is no language which specifically speaks to a release from liability for negligence. Nor is there any language which specifically alerts the parent his child is barred from a recovery based on her bodily injury. It is true, "[t]o require that an express indemnity clause be cast in (a) rote form . . . is to compel contracting parties to lie upon a [P]rocrustean bed of linguistic formalism that inhibits the clear meaning of plain English." (*C.I. Engineers & Constructors, Inc.* v. *Johnson & Turner Painting Co.* (1983) 140 Cal.App.3d 1011, 1018 [189 Cal.Rptr. 824].) Our analysis is not based on the mechanical application of some formula. The presence or absence of the words "negligence" or "bodily injury" is not dispositive. We look instead to the intention of the parties as it appears in

the release forms before the court. In this instance, the intention as expressed in the releases signed by the parent for his child is not clear. Although the parent waived all liability it was in the context of two documents which focused on mental and nervous disorders, defamation and broadcast rights. The scope of the waiver is ambiguous. Where the intention of the parties on the face of the releases is ambiguous, a triable factual issue is presented. ▓ Any doubts as to the propriety of granting the motion for summary judgment should be resolved in favor of the party opposing the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Slivinsky* v. *Watkins-Johnson Co., supra,* 221 Cal.App.3d at p. 804.) We are mindful of the salutary purposes sometimes served by releases in diminishing the risk of litigation to groups and entities sponsoring student and recreational activities. However we cannot say the release documents signed by Hohe and her parent bar recovery for her personal injuries as a matter of law. Accordingly, we must reverse the summary judgment.

### V

Finally, Hohe contends hypnotism is an ultrahazardous activity. It is unnecessary to reach this issue in deciding whether or not the court properly granted summary judgment. We decline Hohe's invitation to direct the court on how it should receive evidence on that issue.

### VI

We similarly need not decide whether or not the attorney fees provision found in the release forms would entitle PTSA to attorney fees. The court denied PTSA its attorney fees and costs on its motion for summary judgment. Since we have decided the court erred in granting judgment to PTSA, it follows PTSA is not entitled to attorney fees or costs.

### DISPOSITION

The judgment is reversed. The order denying attorney fees and costs is affirmed. All parties to bear their own costs on appeal.

Huffman, Acting P. J., concurred.

**NARES, J.,** Dissenting.—Although I agree completely with sections I through III of the majority opinion, I dissent from the conclusion[1] reached

---

[1] I agree with the majority's statements in section IV regarding the social value of releases and the difficulties which face the successful drafter of a release.

in section IV. The release signed here clearly, plainly, and unambiguously informs a signer it is a release of *"all* liability, loss or damage . . . caused by or arising in any manner from my participation in the Magic of the Mind Show." (Italics added.) In all fairness, it is difficult to imagine what more any drafter could do to advise a layperson the release covers *all* types of liability than to say so.

Of course, I acknowledge the series of cases stating the word "negligence" must be used if negligence is to be released. (See, e.g., *Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 319 [195 Cal.Rptr. 90].)

However, as the majority correctly notes, the validity of a release should not turn on "magic" words. Instead, the issue is whether a layperson such as Hohe understood, from whatever language used, that she was releasing persons from negligence liability.

With this in mind, I turn (as does the majority) to the question of the parties' intention when these release forms were signed. In resolving this question, the following facts are undisputed: (1) Sara had seen the hypnotism show before; (2) part of the show involved hypnotized persons falling down; (3) Sara solicited the opportunity to be hypnotized; and (4) prior to the show she (and her father) released the hypnotist and any third parties "from *any* and *all* liability." (Italics added.)

I am unable to discern, as does the majority, the existence of any ambiguity in the phrase "any and all liability."[2] Sara had seen the show, was aware that participants would fall down, and elected to be among them. She now seeks compensation for injuries allegedly incurred when she fell down. The alleged harm is precisely that for which she released all others from liability. (Cf. *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589 [250 Cal.Rptr. 299]; *Kurashige* v. *Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606 [246 Cal.Rptr. 310]; *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1 [236 Cal.Rptr. 181]; *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194].) Based upon the foregoing, I would hold the release effective and affirm the judgment.

---

[2] The release, quoted in footnote 2 of the majority opinion, *ante*, page 1563, is not written in legalese or insurance company double-talk.