[No. D037347. Fourth Dist., Div. One. Apr. 17, 2002.]

LONA TOMLINSON, Plaintiff and Appellant, v. QUALCOMM, INC., Defendant and Respondent.

## COUNSEL

Ross & Morrison, Gary B. Ross and Andrew D. Morrison for Plaintiff and Appellant.

William B. Sailer; Heller, Ehrman, White & McAuliffe, Tracy S. Achorn and Robert W. Bell, Jr., for Defendant and Respondent.

## OPINION

**McDONALD, Acting P. J.**—Appellant Lona Tomlinson, an at-will employee of respondent Qualcomm, Inc., received a family leave of absence from her employment as provided by California's Family Rights Act (Gov. Code, § 12945.2)[1] (CFRA) and Qualcomm's personnel policies. During Tomlinson's family leave of absence, Qualcomm implemented a company-wide reduction in work force; Tomlinson was among the more than 300 employees whose employment was terminated.[2] Tomlinson argues that the CFRA immunizes persons on family leave from employment termination. She alternatively argues that Qualcomm's personnel polices superseded her at-will employment agreement by guaranteeing that she be reinstated to her

---

[1]All further statutory references are to the Government Code unless otherwise specified. The official title of the CFRA is the Moore-Brown-Roberti Family Rights Act. (§ 12945.1.)

[2]Qualcomm selected the employees to be laid off by ranking them on their skills, performance, and importance to the company. Tomlinson was evaluated and selected for layoff because she apparently received the lowest possible rating. Although Tomlinson's lawsuit contained a claim that Qualcomm discriminated against her by selecting her for layoff because she had taken maternity leave or family leave rather than any legitimate criteria, the jury rejected that claim. Because Tomlinson makes no challenge to the jury's verdict on her discrimination claim, we presume the evidence supports Qualcomm's assertion that Tomlinson was selected for layoff based on Qualcomm's evaluation of her performance.

job after completing her family leave. We are not persuaded by either argument and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Tomlinson's Employment Agreement*

Tomlinson sought employment with Qualcomm in the fall of 1997 as a manager of business development. Her employment application specified that, if hired, her employment would be on an *at-will* basis. ▮▮▮ On September 15, 1997, she began working for Qualcomm and signed an employment contract, entitled "Terms of Employment,"[3] reiterating that "[e]mployment with [Qualcomm] will be at-will, terminable by the employee or the company with or without cause or notice. This supersedes all other agreements on this subject and can be modified only in writing and signed by the Chairman of the Board of [Qualcomm]." Qualcomm's personnel polices also specify that employment is on an at-will basis.

B. *Tomlinson's Leave of Absence and Subsequent Layoff*

In October 1998 Tomlinson submitted her request for maternity and family leave. She requested a six-week maternity leave commencing November 16, 1998, with a return to work date of December 28, 1998. She also asked for family leave commencing December 28, 1998, during which time she would work at home on a reduced 20-hour work week for three months, and thereafter return to a 30-hour per week work schedule.

Qualcomm's written response approving her request for family leave stated the request for leave met the statutory requirements, and: "So long as you return before the expiration of your FMLA entitlement, you will be

---

[3]On appeal, Tomlinson argues this written agreement, introduced at trial as exhibit 1, was not an express employment agreement but merely a prehiring application form she signed one month before she began working, and under *Harden v. Maybelline Sales Corp.* (1991) 230 Cal.App.3d 1550 [282 Cal.Rptr. 96], the terms of exhibit 1 did not create an express at-will contract. However, in the proceedings below Tomlinson did not claim (either in opposition to Qualcomm's motion in limine or its nonsuit motion) that exhibit 1 was not her employment contract, and she did not contend that it was a prehire application form rather than an agreement signed when she began working. To the contrary, Tomlinson admitted at trial that she signed the agreement on or about September 15, 1997, the date she began her employment with Qualcomm. Because Tomlinson apparently did not argue below that exhibit 1 was prefatory to employment and did not constitute an employment contract, she may not change her theory for the first time on appeal. (*Strasberg v. Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906, 920 [59 Cal.Rptr.2d 474].)

returned to your position or an equivalent job with equivalent pay, benefits and terms and conditions of employment. . . . [¶] Your family leave begins on December 28, 1998, your job is guaranteed if you return to work by June 14, 1999, based on a 20 hour per week, reduced work schedule Family Leave. . . . Based on this arrangement, you will be returning to active status, 30 hours per week commencing March 22, 1999."

However, Tomlinson was thereafter selected for layoff as part of Qualcomm's company-wide work force reduction. She was informed of Qualcomm's decision to terminate her employment on February 2, 1999.[4]

### C. *The Lawsuit and Judgment*

Tomlinson's complaint against Qualcomm alleged claims for breach of contract, pregnancy discrimination and retaliation in violation of CFRA, termination of employment in violation of public policy, and unfair business practices. After Tomlinson completed presenting her trial evidence, Qualcomm moved for nonsuit. The court granted the motion for nonsuit as to all of Tomlinson's claims except her discrimination claim. The jury rejected her discrimination claim (see fn. 2), and the court entered judgment in favor of Qualcomm.

## II

### ANALYSIS

### A. *Persons on CFRA Leave Are Not Immunized from Layoff During the Leave*

Tomlinson argues that section 12945.2, subdivision (a) of the CFRA barred Qualcomm from terminating her employment as part of a company-wide work force reduction. That subdivision requires an employer to grant family leave to qualified employees and, when granting that leave, to provide a "guarantee of employment in the same or comparable position upon the termination of the leave." She asserts that the statute contains only one exception to this guarantee, which is inapplicable to her, and therefore her employment could not be terminated during her family leave.

However, the provisions of California Code of Regulations, title 2, section 7297.2 (Regulation 7297.2), adopted by the Fair Employment and Housing

---

[4]It is unclear whether Tomlinson continued working for Qualcomm after February 2, 1999; although she was informed of Qualcomm's decision on that date, she continued receiving her salary until April 3, 1999.

Commission (FEHC)[5] (see Reg. 7297.2, Register 95, No. 28 (July 14, 1998) p. 150), clarify that the guarantee of reinstatement to the same or comparable position does not preclude an employer from terminating the employee's employment as part of a work force reduction. Subdivision (c) of Regulation 7297.2 states:

"(1) . . . [¶] An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the CFRA leave period. An employer has the burden of proving, by a preponderance of the evidence, that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny reinstatement.

"(A) If an employee is laid off during the course of taking CFRA leave and employment is terminated, *the employer's responsibility to* continue CFRA leave, maintain group health plan benefits and *reinstate the employee ceases at the time the employee is laid off* . . . ." (Italics added.)

When the Legislature authorizes a state administrative agency to adopt regulations to implement or interpret a statutory scheme, the regulations are presumptively valid and binding and courts will enforce them if the regulations are not inconsistent with the statute and are not arbitrary or capricious. (*Marshall v. McMahon* (1993) 17 Cal.App.4th 1841, 1847-1848 [22 Cal.Rptr.2d 220].) Under Regulation 7297.2, subdivision (c), Qualcomm's grant of family leave to Tomlinson did not confer any greater right on Tomlinson to avoid a company-wide work force reduction than she would have possessed had she not taken the leave, and Qualcomm's obligation to reinstate her terminated when her employment was terminated. Accordingly, Tomlinson's claim under CFRA was properly dismissed unless Regulation 7297.2, subdivision (c) is invalid because inconsistent with the statutory scheme.[6]

An administrative regulation is presumptively valid, and if there is a reasonable basis for it, a reviewing court will not substitute its judgment for that of the administrative body; the role of the reviewing court is limited to the legality rather than the wisdom of the challenged regulation. (*Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 355 [185 Cal.Rptr. 453, 650 P.2d 328].) "In construing state statutes vis-à-vis administrative regulations, a court should look first to the language, then to

---

[5]The FEHC is authorized to adopt regulations to "interpret, implement, and apply" the provisions of the Fair Employment and Housing Act (§ 12935, subd. (a)), which encompasses the provisions of the CFRA.

[6]We evaluate only whether the regulation is inconsistent with the CFRA because Tomlinson raises no claim that the regulation is invalid under the arbitrary or capricious standard.

the legislative history, and finally to the general principles and policies underlying the statutory scheme. (*Miller* v. *Woods* (1983) 148 Cal.App.3d 862, 876-877 [196 Cal.Rptr. 69].) [¶] . . . On review, the burden of proof is on the party challenging the regulation, because the administrative agency's action comes before the court with a presumption of correctness and regularity. [Citation.]" (*Marshall v. McMahon, supra,* 17 Cal.App.4th at pp. 1847-1848.)

■ Tomlinson raises several arguments to support her claim that Regulation 7297.2, subdivision (c) is inconsistent with the statutory scheme. First, she asserts that because section 12945.2, subdivision (a) states that continued employment must be "guarantee[d]," a regulation permitting termination of employment during family leave is inconsistent with the statutory scheme. However, section 12945.2, subdivision (a)'s guarantee is for "employment in the *same or a comparable position.*" (Italics added.) Regulation 7297.2, subdivision (c)'s "no greater right" language implements the statutory assurance that an employee on leave is entitled to continued employment in the same or comparable position rather than to a different and superior position. Other provisions of the CFRA confirm that employees on family leave are not entitled to superior rights as a result of taking leave, but are entitled instead to only those rights they would have had if they had not taken leave: the employer must maintain the employee's group health plan coverage "at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of the leave" (§ 12945.2, subd. (f)(1)); and an employee returning from leave returns with "no less seniority than the employee had when the leave commenced, for purposes of layoff . . . ." (§ 12945.2, subd. (g).) The "no greater right" regulation is not inconsistent with the statutory guarantee of continued employment.[7]

Second, Tomlinson argues Regulation 7297.2, subdivision (c) is invalid because the CFRA provides only one exception to the guaranteed reinstatement provided by section 12945.2, subdivision (a),[8] and the principle of *expressio unius est exclusio alterius* requires that we construe the statute to

---

[7]The provisions of the federal Family and Medical Leave Act (29 U.S.C. § 2614) (FMLA), which the CFRA closely parallels (see Concurrence in Sen. Amends., Analysis of Assem. Bill No. 1460 (1993-1994 Reg. Sess.) as amended Aug. 19, 1993, p. 1 [1993 amendments to CFRA made to conform certain provisions of CFRA to provisions of FMLA]), confirms that a guarantee of continued employment after leave can coexist with a prohibition on conferring greater rights to an employee on leave. (Cf. 29 U.S.C. § 2614(a)(1) & (3).)

[8]Section 12945.2, subdivision (r) provides that, "[n]otwithstanding subdivision (a), an employer may refuse to reinstate an employee returning from leave to the same or a comparable position" for a limited class of highly paid employees if certain criteria are satisfied.

preclude any other exceptions (*Sierra Club v. State Bd. of Forestry* (1994) 7 Cal.4th 1215, 1230 [32 Cal.Rptr.2d 19, 876 P.2d 505]), and Regulation 7297.2, subdivision (c) cannot create a second exception to reinstatement. However, we do not interpret Regulation 7297.2, subdivision (c) as creating an exception to the employer's continued employment obligations. Rather, it makes explicit that the rights conferred on employees by the CFRA do not entitle the employee to any *superior* right to employment than they would have possessed had they continued working rather than taking family leave.[9] Accordingly, the principle of *expressio unius est exclusio alterius* is inapplicable.

Third, Tomlinson argues that the Legislature was aware of the FMLA when it amended the CFRA in 1993, but intentionally declined to insert the "no greater right" language of the FMLA into the CFRA. ▪▪▪ Regulation 7297.2 is therefore inconsistent with the intent of the statutory scheme because it reinserts the "no greater right" language omitted by the Legislature.[10] ▪ As a preliminary matter, Tomlinson provides no legislative history supporting her claim that the "no greater right" language was a part of, but was then deleted from, the assembly bill that amended the CFRA in 1993. ▪ Additionally, legislative inaction is a thin reed from which to divine the intent of the Legislature.[11] (*Marshall v. McMahon, supra,* 17 Cal.App.4th at p. 1849, fn. 7.) ▪ Accordingly, the absence of the

---

[9]The provisions of the FMLA confirm that the "no greater right" provision is not an *exception* to the employer's reinstatement obligations but instead only clarifies the extent of the rights granted to employees under the FMLA. Under the FMLA, an employee is entitled to be restored to the same or equivalent position on return from leave (29 U.S.C. § 2614(a)(1)), subject to the same single *exemption* for certain highly paid employees as provided by the CFRA (compare 29 U.S.C. §2614(b) with Gov. Code, § 12945.2, subd. (r)). The FMLA states, however, that although 29 United States Code section 2614(a)(1) confers on employees the entitlement to restoration following the leave, "[n]othing in this section *shall be construed* to entitle any restored employee to—[¶] . . . [¶] . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." (29 U.S.C. § 2614(a)(3), italics added.) This confirms our interpretation that the "no greater right" language is not an exception to the employer's obligation but is instead an interpretation of the rights conferred on employees by the statutes.

[10]The absence of the "no greater right" provision from the statute, standing alone, is of no moment to the validity of the administrative regulation because " '[t]he absence of any specific [statutory] provisions regarding the regulation of [an issue] does not mean that such a regulation exceeds statutory authority . . . .' [Citations.] The [agency] is authorized to 'fill up the details' of the statutory scheme. [Citation.]" (*Ford Dealers Assn. v. Department of Motor Vehicles, supra,* 32 Cal.3d at p. 362.)

[11]Moreover, in this case it appears the legislative inaction argument is a double-edged sword. Prior to the 1993 amendments to the CFRA, Regulation 7297.2, subdivision (c) provided that a "refusal to reinstate . . . is justified if the employer shows . . . that the same position and any comparable position(s) had ceased to exist because of legitimate business reasons . . . ," and although an employer would be required under the circumstances to make "reasonable accommodation by alternative means" for the employee, the employer was not

"no greater right" language from the 1993 amendments does not undermine our conclusion that Regulation 7297.2, subdivision (c) is a valid regulation interpreting, implementing and applying the provisions of the CFRA.

### B. *Qualcomm Policies Do Not Support Tomlinson's Breach of Contract Claim*

■ Tomlinson argues that even if the CFRA permits an employer to terminate the employment of an employee who is on family leave, Qualcomm's personnel handbook and policies stated that an employee on family leave was guaranteed employment, and that these policies, coupled with the guarantee given to Tomlinson when Qualcomm granted her leave, created an enforceable promise under *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*) that was breached when Qualcomm included her in its work force reduction.

#### 1. *Tomlinson's Express At-will Contract Precludes Any Implied Contrary Agreement*

■ Although employment in California is statutorily presumed to be at will (Lab. Code, § 2922) and an at-will employee may be terminated at any time, the courts have recognized that the parties may agree to depart from the at-will status, and that this agreement may be either express or may be implied from their conduct. (*Guz, supra,* 24 Cal.4th at pp. 335-337.) *Guz* notes that one of the factors the courts examine to determine if there is an implied contrary agreement is the employer's personnel documents, explaining that: "When an employer promulgates formal personnel policies and procedures in handbooks, manuals, and memoranda disseminated to employees, a strong inference may arise that the employer intended workers to rely on these policies as terms and conditions of their employment, and that employees did reasonably so rely. [Citation.] Both parties derive benefits from such an arrangement. From the employees' perspective, formal policies promote fairness and consistency, guarding against the arbitrary, capricious, and incongruous treatment of similar cases. By the same token, such policies may also help the employer by enhancing worker morale, loyalty, and productivity, providing competitive advantage in the labor market, and minimizing employee litigation. [Citations.] [¶] For these reasons, logic suggests that the employer may intend, and employees may understand, such

---

required "to create additional employment [that] would not otherwise be created" to accommodate the employee. (Reg. 7297.2, Register 93, No. 7 (Feb. 12, 1993) p. 35.) Because the Legislature's 1993 amendments to the CFRA did not expressly overrule this administrative interpretation of the employer's obligations, a reliance on legislative inaction could be construed as an implicit approval of this administrative construction of the rights conferred by the CFRA.

generally promulgated policies as a systematic approach to personnel relations, providing a clear and uniform alternative to haphazard practices, understandings, and arrangements within the company. Therefore, where the employer has chosen to maintain such written policies, the terms they describe must be a central focus of the contractual analysis." (*Guz, supra,* 24 Cal.4th at pp. 344-345.)

 Tomlinson argues that the family leave policy contained in Qualcomm's personnel manual created an implied-in-fact agreement of continued employment. Although the California courts will under some circumstances imply an agreement contrary to the statutorily presumed at-will status, the courts will not imply an agreement if doing so necessarily varies the terms of an express at-will employment agreement signed by the employee. (See *Guz, supra,* 24 Cal.4th at p. 340, fn. 10 [collecting cases].) For example, in *Slivinsky v. Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799 [270 Cal.Rptr. 585], the employee signed a job application form acknowledging that if hired she would be employed on an at-will basis, and also signed an employment agreement confirming she would be employed on an at-will basis. (*Id.* at pp. 802-803.) After her employment was later terminated as part of a company reduction in work force, she argued that her employment termination violated an implied agreement, based in part on the employer's written personnel policies, that her employment would be terminated only for cause. The court rejected that argument, stating: "Here, . . . the parties intended the application and employee agreement to memorialize their understanding with respect to grounds for termination. Consequently, 'evidence of an implied agreement [that] contradicts the terms of the written agreement is not admissible. "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." [Citation.]' ([Quoting *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 316 [231 Cal.Rptr. 820]].) [¶] Because we hold that the contract is a contract for employment terminable at will, we do not reach the issues regarding whether good cause existed for Slivinsky's termination based on Watkins-Johnson's decision to reduce its work force." (*Slivinsky v. Watkins-Johnson Co., supra,* 221 Cal.App.3d at pp. 805-806.)

Here, as in *Slivinsky,* Tomlinson signed an employment application and an employment agreement expressly stating that her employment was on an at-will basis.[12] Tomlinson now argues the statements on family leave contained in Qualcomm's personnel handbooks created an implied agreement

[12]Tomlinson's employment agreement specified her employment would be at will. Her employment application also stated: "I understand and agree that if I am hired, my employment may be terminated, at will, with or without cause, . . . at any time at the option of either [Qualcomm] or myself. I understand that no supervisor or representative of

that her employment was not terminable at will. Even assuming the statements cited by Tomlinson contradicted the express agreement by guaranteeing her continued employment (but see *post*), under well-established case law, " '[t]here cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.' [Citation.] The express term is controlling even if it is not contained in an integrated employment contract. [Citation.] Thus, the . . . express at-will agreement precluded the existence of an implied contract requiring good cause for termination." (*Camp v. Jeffer, Mangels, Butler & Marmaro* (1995) 35 Cal.App.4th 620, 630 [41 Cal.Rptr.2d 329]; accord, *Guz, supra*, 24 Cal.4th at p. 340, fn. 10.)

 Tomlinson raises several arguments to avoid the preclusive effect of her express at-will agreement.[13] Tomlinson argues that because the express agreement deals with only employment termination and the implied agreement addresses reinstatement after leave, the express agreement does not embrace the same subject as the implied agreement. However, because both address Qualcomm's obligation, if any, to continue employing Tomlinson during and after the family leave, we conclude both embrace the same subject.

Tomlinson alternatively argues that, even if the *guarantee* is inconsistent with the express at-will agreement, a *termination of employment* policy was adopted by Qualcomm in mid-1998, after the parties entered their express at-will agreement. Tomlinson asserts that because Civil Code section 1625 provides later executed agreements supersede earlier agreements, the termination of employment policy rather than the express at-will agreement is controlling. Assuming Civil Code section 1625 is applicable here,[14] Tomlinson's argument appears to be that the termination of employment policy modified the terms of the express agreement by eliminating the

[Qualcomm] other than the Office of the Chairman has any authority to enter into any agreement contrary to the foregoing."

[13]On appeal, Tomlinson also seeks to avoid the preclusive effect of the express agreement by arguing exhibit 1 was not an express employment agreement but was instead a prehiring application form she signed before she began working, and under *Harden v. Maybelline Sales Corp., supra*, 230 Cal.App.3d 1550, the terms of exhibit 1 did not create an express at-will agreement. However, as discussed in footnote 3, *ante*, this contention may not be raised for the first time on appeal because it is a " ' "new theory [that] contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial . . . ." [Citations.]' [Citation.]" (*Strasberg v. Odyssey Group, Inc., supra*, 51 Cal.App.4th at p. 920.) The factual issues not presented to the trial court include the date on which Tomlinson signed exhibit 1 and whether the parties understood exhibit 1 to be the employment contract or merely part of the application process.

[14]Civil Code section 1625 provides that the "execution of a contract in writing . . . supersedes all the *negotiations or stipulations* . . . [that] preceded or accompanied the execution of the instrument." (Italics added.) That section is in effect a merger provision that

at-will employment relationship and replacing it with a guarantee of employment under certain circumstances. ■ However, this contention is contrary to the express provisions of the employment agreement that Qualcomm employment "will be at-will . . . [and] this supersedes all other agreements on this subject and can be *modified only in writing and signed by the Chairman of the Board*"; there is no evidence that the termination of employment policy satisfied the requirements for altering the contractually agreed-upon at-will employment agreement. In *Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33 [105 Cal.Rptr.2d 525], the court rejected an analogous argument by an employee whose written at-will employment agreement specified "only the Board of Directors, by affirmative action, has the authority to change or make any agreement contrary to" the at-will agreement. (*Id.* at p. 36.) The court held that the employee, having agreed to a specific and exclusive manner by which the at-will agreement could be amended, could not assert that the agreement was amended by acts other than affirmative action by the board of directors. (*Id.* at pp. 38-39; accord, *Haggard v. Kimberly Quality Care, Inc.* (1995) 39 Cal.App.4th 508, 521-522 [46 Cal.Rptr.2d 16].) Here, the parties agreed to both the at-will employment relationship and to the exclusive method for amending the at-will nature of Tomlinson's employment, and therefore no other purported amendments (whether in written or oral form) are effective.[15]

Tomlinson finally contends that Qualcomm is bound by the representations contained in the guarantee under an amalgamation of agency and estoppel principles. She argues that the person who issued the guarantee was an agent authorized to make the representation and Tomlinson relied on the guarantee to her detriment. However, the courts have rejected substantively indistinguishable arguments by employees who asserted that, notwithstanding an express at-will agreement, they were entitled to rely on subsequent oral and written representations by their employers and employers' agents contrary to the express at-will agreement. (See, e.g., *Malmstrom v. Kaiser Aluminum & Chemical Corp., supra,* 187 Cal.App.3d at pp. 318-319 [rejecting estoppel claim because reliance on representations contradicting written agreement is not reasonable]; *Slivinsky v. Watkins-Johnson Co., supra,* 221

---

makes the writing, rather than prior oral discussions or agreements, the controlling agreement. (See, e.g., *Seaboard Dairy Credit Corp. v. Herman* (1934) 139 Cal.App. 320, 326 [33 P.2d 1042].) That section does not appear to apply to modification of a prior express written agreement, particularly if the express agreement specifies the exclusive mode for amending the agreement.

[15]Tomlinson, citing 8 Corbin on Contracts (rev. ed. 1999) section 40.13, asserts the amendment clause is invalid because the parties to an agreement cannot, even by express agreement, deprive themselves of the power to amend the agreement by subsequent agreement. However, the agreement here does not preclude amendment, but specifies the exclusive method for amending it, and Tomlinson cites no California law suggesting a clause specifying an exclusive method for amending the agreement is unenforceable.

Cal.App.3d at p. 807 [rejecting fraud claim because employee could not reasonably rely on representations of continued employment that contradicted express written agreement providing at-will relationship]; cf. *Starzynski v. Capital Public Radio, Inc., supra,* 88 Cal.App.4th at pp. 38-39.)

### 2. *The Layoff Did Not Violate the Guarantee*

Even assuming that Qualcomm's personnel policies, coupled with the *guarantee* contained in the letter that granted Tomlinson's request for family leave, could be deemed a valid and binding modification of her at-will status, the issue nevertheless remains whether her *as-modified* status insulated her employment from being terminated. We are convinced that Qualcomm's guarantee did not preclude Qualcomm from terminating Tomlinson's employment as part of a company-wide reduction in work force, and therefore the layoff would not have breached her agreement even were it modifiable as urged by Tomlinson.

The termination of employment policy provides that employment with Qualcomm was "at will and . . . may be terminated by the company . . . at any time, with or without notice." It also specifically provides that one of the reasons Qualcomm might initiate a termination is "[w]hen it has been determined that an organizational realignment or a lack of work requires a reduction in personnel." Thus, even if this policy *modified* Tomlinson's agreement, she remained an employee whose employment was subject to termination based on a company reduction of work force.

Tomlinson notes, however, that this policy also states that "exceptions to this policy [may] be approved . . . by a Vice President of Human Resources." From this predicate, she argues the "Leave[] of Absence" policy outlined in exhibit 78 constituted an authorized exception to the terminable at-will status of employees because this policy was approved in 1998 by Dan Sullivan in his capacity as senior vice-president of human resources. However, this policy only states that "employees returning from leaves of absence [are placed] in positions with the *same* or similar job content, *status*, and pay *as the previously held position.*"[16] (Italics added.) The same status as Tomlinson's previously held position is an at-will status permitting employment termination for company-wide work force reductions, not a different

---

[16]With particular reference to "Family Leave," the policy states that Qualcomm "grants unpaid family leave to all employees, *as directed by both state and federal law*" (italics added), and then synopsizes the eligibility requirements, length of leave, reemployment rights and continuation of benefits rights in terms identical to the rights to which the employee is statutorily entitled. The statement that Qualcomm will provide employees with those rights as required by state law does not support Tomlinson's argument because, as discussed in part II.A. *ante*, persons on CFRA leave are not immunized from layoff during the leave.

position that was insulated from layoff, and therefore she was entitled only to *return* to a terminated position.

Tomlinson's reliance on the provisions of the handbook entitled "Qualcomm Benefits," introduced as trial exhibit 81, is not persuasive. The handbook states that "[e]fforts are made to place employees returning from a leave of absence in positions with the same or similar job content, status, and pay as the previously held position. However, *except where required by law, reinstatement to any position is not guaranteed.*"[17] (Italics added.) Qualcomm's personnel handbook provides no assurance of reinstatement except to the extent required by law, and neither state nor federal law insulates a person on family leave from employment termination as part of a company-wide reduction in work force.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

O'Rourke, J., and McConnell, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 10, 2002. Brown, J., did not participate therein.

---

[17]Tomlinson cites Qualcomm's trial testimony, which stated that Qualcomm family leave policy provided benefits broader than required by state and federal law, to argue that Qualcomm provides reinstatement rights beyond those granted by statute. However, Tomlinson misstates the import of that testimony. The witness explained that the broader benefits provided by Qualcomm were that employees were allowed to take maternity leave and then take family leave, even though state and federal law permitted the employer to require these leaves to run concurrently. That witness reiterated that a person on leave was subject to layoff, and did not testify that the *reinstatement* benefits provided by Qualcomm were broader than required by state or federal law.