Filed 6/12/14  Davis v. Skyone Federal Credit Union CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SHERYL DAVIS,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>SKYONE FEDERAL CREDIT UNION,<br><br>　　　Defendant and Respondent. | B240943<br><br>(Los Angeles County<br>Super. Ct. No. BC449548) |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Richard L. Fruin, Jr., Judge.  Affirmed.

Gary Rand and Suzanne E. Rand-Lewis for Plaintiff and Appellant.

Richardson ♦ Harman ♦ Ober and Paul F. Schimley for Defendant and

Respondent.

Sheryl Davis appeals a summary judgment in favor of Skyone Federal Credit Union (Credit Union), formerly known as FAA First Federal Credit Union. She contends (1) the motion was procedurally defective; (2) the trial court erred by denying her request to continue the hearing; (3) there are triable issues of fact as to each count; and (4) the court erred by overruling her evidentiary objections. We conclude that she has shown no prejudicial error and will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Davis's Hiring and Acknowledgment of At-Will Employment*

Credit Union hired Davis in September 2006 as a staff accountant. She signed an employment application dated August 4, 2006, that included an acknowledgement stating:

"I further understand that my employment with the Credit Union does not constitute any form of contract, implied or expressed, and such employment will be terminable at will by myself or the Credit Union upon notice of one party to the other. My continued employment is dependent on satisfactory performance and the continued need of my services as determined by the Credit Union."

Davis countersigned a letter offering her employment on August 29, 2006, under the words "Agreed and Accepted." The letter included the following language:

"This is a confirmation of a job offer not a contract. The employment relationship is based on mutual consent. Accordingly, either you or the Credit Union can terminate the employment relationship at will, at any time, with or without cause or advance notice."

2

She signed a document entitled "Employment At-Will" on her first day of work on September 11, 2006. The document included the following language:

"I understand that the Credit Union is an 'at will' employer and as such, employment with the Credit Union is not for a fixed term or definite period and may be terminated at the will of either party, with or without cause, and without prior notice.

"No supervisor or other representative of the Credit Union (except the President/CEO) has the authority to enter into an agreement for employment for any specified period of time, or to make any agreement contrary to the above. No one has the authority to make verbal statements of any kind that are legally binding on the Credit Union.

"In addition, I understand that nothing contained in the Employee Handbook may be construed as creating a promise of future benefits or a binding contract with the Credit Union for benefits or for any other purpose.

"My signature signifies that I understand that the foregoing agreement on at-will status is the sole and entire agreement between the Credit Union and myself concerning the duration of my employment and the circumstances under which my employment may be terminated. It supersedes all prior agreements, understandings, and representations concerning my employment with the Credit Union."

She also signed on September 11, 2006, and again on February 26, 2009, an acknowledgement that an employee handbook had been made available to her. A section in the handbook with the heading "**Employment At-Will**" stated, in part:

"The Credit Union is an 'at will' employer and as such, employment with the Credit Union is not for a fixed term or definite period and may be terminated at the will of either party, at any time, with or without cause, and without prior notice.

[¶] . . . [¶]

"Nothing contained in this Handbook may be construed as creating a promise of future benefits or a binding contract with the Credit Union for benefits or for any other purpose."

### 2. *Employment and Termination*

Davis worked as a staff accountant in the Credit Union's accounting department beginning in September 2006. Sonya Lowe was in charge of human resources at the time. Davis was over 40 years old when she was hired.

Davis informed her supervisor, Curtis Martin, in late September 2006 that her son was seriously ill. She took a previously planned two-week vacation in October 2006. She informed Martin in February 2007 that her partner was seriously ill with a brain tumor and asked to change from full-time to part-time work status. Martin responded that her position required full-time employment and denied her request. So Davis used her unpaid personal time off instead.

Davis also requested time off to care for her gravely ill grandmother in February 2007 or to change to part time. Martin denied her requests. Her grandmother died the next day. Davis informed Lourdes Ruano, Credit Union's chief financial officer, in April 2007 that her partner had been hospitalized for brain surgery and requested time off. Ruano denied her request stating that Davis was not entitled to time

4

off because her partner was not a member of her immediate family. Davis informed Martin later that same day that she just learned that her sister had died and requested time off. She was allowed to take three days of bereavement leave.

Davis requested two months of family medical leave in March 2008 to care for her daughter who was suffering complications from pregnancy. Martin approved her request. After returning from leave, Davis worked part of each work day in the operations department, which needed assistance, for a period of time. She suffered a workplace back injury in August 2008. The human resources department submitted a workers compensation claim on her behalf, and she visited doctors and received physical therapy.

Davis received a notice of disciplinary action in September 2008 stating that she had failed to provide sufficient cash for an automatic teller machine. She informed Martin in November 2008 that her husband, from whom she was separated, was hospitalized in a coma and requested time off. Martin approved her request. Her husband died in December 2008. She took two days of bereavement leave. After she returned, Martin stated, " 'Why the hell are you the only person that always has to be called in a time of need?' " She was later asked to provide a copy of her husband's death certificate, which she did. She informed Martin on April 15, 2009, that her brother had died. She was allowed three days off for bereavement and vacation.

Martin and the new human resources director, Kurt James, informed Davis on April 28, 2009, that she was being "laid off" because the company was downsizing.

She asked if she could be transferred to another position, but was told no. Davis was in her 50's at the time.

3.    *Trial Court Proceedings*

Davis filed a complaint against Credit Union in November 2010 and filed a first amended complaint in May 2011. She alleges that Credit Union terminated her employment in retaliation for her suffering a workplace injury and filing a workers compensation claim and for taking leave from work. She also alleges that her termination was motivated by age discrimination.

Davis alleges counts for (1) breach of an express oral agreement to terminate only for good cause and an implied agreement to the same effect; (2) breach of an implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) employment discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.); (5) retaliation in violation of FEHA; (6) intentional infliction of emotional distress; (7) unfair competition (Bus. & Prof. Code, § 17200 et seq.); and (8) intentional misrepresentation.

Credit Union filed a motion for summary judgment or summary adjudication of issues and a separate statement of undisputed material facts on October 28, 2011. On November 14, 2011, the parties filed a joint stipulation to continue the trial date to March 12, 2012, and continue the hearing date on the motion to February 3, 2012. The trial court granted the request and continued both dates as requested. Credit Union filed an amended motion for summary judgment or summary adjudication of issues on November 28, 2011. The amended notice of motion identified nine issues to be

6

adjudicated corresponding to each of the eight counts alleged in the complaint, plus an additional issue relating to the fourth count. The amended separate statement set forth the same nine issues. Credit Union filed declarations and other documentary evidence in support of the motion.

Credit Union argued in the motion that Davis had agreed in writing that her employment was terminable at will and, in any event, she was laid off as part of a reduction in force in response to recent financial losses, which was a legitimate, nondiscriminatory and nonretaliatory reason. It also argued that it had committed no extreme and outrageous, unlawful, unfair, or fraudulent conduct as necessary to support Davis's counts for intentional infliction of emotional distress, unfair competition, and intentional misrepresentation.

Davis filed a motion to compel further responses and production of documents in response to her document demands on November 23, 2011. She also filed a motion to compel further responses to her special interrogatories on the same date. She filed an ex parte application on December 8, 2011, to strike or deny Credit Union's motion for summary judgment or summary adjudication and advance the hearing on her discovery motions, arguing that Credit Union had refused comply with its discovery obligations. On December 9, 2011, the trial court granted her ex parte application in part by advancing the hearing on the discovery motions to December 19, 2011. Credit Union opposed the discovery motions, and served supplemental responses to the special interrogatories.

At the hearing on the discovery motions on December 19, 2011, the trial court stated that it had not timely received the file and was not prepared to rule on the motions. The court continued the hearing to January 4, 2012, the date initially set for hearing. On that date, the court again continued the hearing to January 17, 2012. On January 17, 2012, the court stated that it had not reviewed the motions. The court nonetheless heard oral argument and took the matter under submission. The court filed an order on January 18, 2012, granting the discovery motions in part and denying them in part, ordering Credit Union to provide a verification of its supplemental responses to the special interrogatories, further respond to one special interrogatory, and produce documents responsive to two document demands.

Davis filed an ex parte application on February 3, 2012, to continue the trial date and the hearing date on the motion for summary judgment or summary adjudication. She argued that she needed additional time to prepare her opposition to the motion in light of the supplemental discovery responses served by Credit Union and over 1,300 documents produced by Credit Union pursuant to the order compelling production. The trial court granted the ex parte application, continuing the trial date to June 6, 2012, and continuing the hearing date to March 16, 2012.

Davis filed her opposition to the motion for summary judgment or summary adjudication on March 2, 2012. She argued that Credit Union had failed to allow discovery of its financial condition and had produced numerous unorganized, redacted documents, and that further discovery would disprove the facts asserted by Credit Union. She argued that the motion therefore should be denied or the hearing continued,

8

pursuant to Code of Civil Procedure section 437c, subdivision (h). She also opposed the motion on the merits. Davis filed her own declaration and declarations by her attorney and Lowe, and filed documents in support of her opposition. She also filed objections to 35 items of evidence. Credit Union filed a reply to Davis's opposition and filed its own evidentiary objections. The trial court conducted a hearing on the motion on March 20, 2012, after another brief continuance, and took the matter under submission.

The trial court filed a minute order on March 29, 2012, granting the summary judgment motion and granting summary adjudication on each issue presented. The court denied Davis's request to continue the hearing and filed a 13-page Ruling on Submitted Motions explaining its rulings.

The trial court concluded in its written ruling that undisputed evidence showed that Davis had agreed in writing in several documents that her employment was at will. It stated that Davis had failed to create a triable issue of fact that her employment was other than at will, or that she was misled in this regard, as necessary to support her first, second, and eighth counts. It also concluded that undisputed evidence showed that Credit Union had terminated her employment as part of a cost reduction plan, which was a legitimate, nondiscriminatory and nonretaliatory reason. The court stated that Davis had failed to create a triable issue of fact in this regard, as necessary to support her third, fourth, and fifth counts. It stated further that Davis had failed to create a triable issue of fact as to the existence of any illegal or unfair act or extreme or outrageous conduct, as necessary to support her seventh and sixth counts.

9

The trial court sustained Credit Union's objections to several items of evidence and overruled others. It also ruled on Davis's evidentiary objections. The court entered a defense judgment on April 16, 2102. Davis timely appealed the judgment.

***CONTENTIONS***

Davis contends (1) Credit Union failed to adequately specify the issues to be summarily adjudicated and the undisputed material facts as to each issue; (2) the trial court erred by denying her request to deny the motion or continue the hearing to allow further for discovery; (3) there are triable issues of fact as to each count; and (4) the court erred by overruling her evidentiary objections.

***DISCUSSION***

1. *Standard of Review*

"A court may grant a summary judgment only if there is no triable issue of material fact and the moving party is entitled to judgment in its favor as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) The defendant can satisfy its burden by presenting evidence that negates an element of the cause of action or evidence that the plaintiff does not possess and cannot reasonably expect to obtain evidence needed to establish an essential element. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77] (*Miller*).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).)

10

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. (*Miller*, *supra*, 36 Cal.4th at p. 460.) A different standard of review applies to the court's evidentiary rulings in connection with the motion, which we review for abuse of discretion. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335 [115 Cal.Rptr.3d 538].)

"We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons. (*Conte v. Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 113 [85 Cal.Rptr.3d 299].) Even if the grounds entitling the moving party to a summary judgment were not asserted in the trial court, we must affirm if the parties have had an adequate opportunity to address those grounds on appeal. (*Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 754 [93 Cal.Rptr.3d 198]; *Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 298]; see Gov. Code, § 68081; Code Civ. Proc., § 437c, subd. (m)(2).)" (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 180-181.)

2. *Davis Has Shown No Error in the Failure to Deny the Summary Judgment Motion Based on a Deficient Separate Statement*

A summary judgment motion must be supported by "a separate statement setting forth plainly and concisely all material facts which the moving party contends are undisputed." (Code Civ. Proc., § 437c, subd. (b)(1).) Each material fact stated must be

11

followed by a reference to the supporting evidence.[1]  (*Ibid.*)  "The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denial of the motion."  (*Ibid.*)

Thus, the summary judgment statute expressly grants a trial court the discretion to deny a summary judgment motion if the moving party fails to file a separate statement in compliance with the statute.  The statute, however, does not compel the denial of a summary judgment motion in those circumstances.  A trial court in some circumstances may choose to consider the merits of a summary judgment motion despite deficiencies in the moving party's separate statement.  We review a court's decision to do so for abuse of discretion.  (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 437; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315-316; but see *United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337 [stating the so-called "Golden Rule" of summary judgment that evidence not set forth in the separate statement does not exist].)

Davis argues that Credit Union's separate statement did not adequately set forth the issues to be summarily adjudicated or state facts sufficient to support a judgment in its favor.  Her argument is conclusory and fails to explain the purported deficiencies and how she was prejudiced.  We conclude that Davis has failed to show that the separate statement was deficient or that the trial court abused its discretion by ruling on the merits.

---

[1]    California Rules of Court, rule 3.1350(d) and (h) states the required content and format of a separate statement of undisputed material facts.

3. *Summary Judgment Was Proper as to Each Count*

a. *Davis's Employment Was "At Will"*

An implied agreement to terminate only for good cause cannot arise if such an implied agreement would contradict an express, written at-will employment agreement. (*Tomlinson v. Qualcomm, Inc.* (2002) 97 Cal.App.4th 934, 944; see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 340, fn. 10 (*Guz*).) Davis entered into a written agreement on September 11, 2006, expressly stating that her employment was at will, as stated above.[2] An implied agreement to the contrary therefore could not arise. Credit Union therefore is entitled to summary adjudication of the first count to the extent that it is based on an implied agreement to terminate only for good cause.

Davis also alleges in the first count that on September 11, 2006, Credit Union orally agreed to terminate her employment only for good cause. The parol evidence rule, codified in Civil Code section 1625 and Code of Civil Procedure section 1856, provides that the terms of an integrated written agreement cannot be contradicted by a prior or contemporaneous oral agreement. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 344.) An oral agreement to terminate only for good cause would directly contradict the parties' written at-will employment agreement. An integration clause stating that the contracting parties intended their written agreement to serve as the complete and exclusive expression of their agreement, such as the clause in the "Employment At-Will" agreement quoted above, indicates that the parties intended an

---

[2] Davis created no triable issue of fact as to the existence of an express, written at-will agreement, and did not attempt to do so.

13

integration. Davis presented no evidence that the parties had any contrary intent. We therefore conclude that the written agreement was integrated and precludes any oral agreement to the contrary. Credit Union is entitled to summary adjudication of the first count in its entirety.

b.    *Davis Failed to Controvert the Evidence of a Legitimate, Nondiscriminatory and Nonretaliatory Reason*

An employer may move for summary judgment against a count for employment discrimination based on evidence of a legitimate, nondiscriminatory reason for the adverse employment action. (*Guz, supra*, 24 Cal.4th at p. 357; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1097-1098 (*Kelly*).) A legitimate, nondiscriminatory reason is a reason that is unrelated to prohibited bias and that, if true, would preclude a finding of discrimination. (*Guz, supra*, 24 Cal.4th at p. 358.) The employer's evidence must be sufficient to allow the trier of fact to conclude that it is more likely than not that one or more legitimate, nondiscriminatory reasons were the sole basis for the adverse employment action. (*Kelly, supra*, at pp. 1097-1098.)

By presenting such evidence, the employer shifts the burden to the plaintiff to present evidence that the employer's decision was motivated at least in part by prohibited discrimination in order to avoid summary judgment.[3] (*Guz, supra*,

---

[3]    This burden-shifting test is derived from the three-stage burden-shifting test established by the United States Supreme Court for use at trial in cases involving claims of employment discrimination based on disparate treatment, known as the *McDonnell Douglas* test (*McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817]). (*Guz, supra*, 24 Cal.4th at pp. 354, 357.) A plaintiff has the initial burden at trial to establish a prima facie case of employment discrimination. (*Id.* at p. 354.) On a summary judgment motion, in contrast, a moving defendant has the initial

14

24 Cal.4th at pp. 353, 357; *Kelly, supra*, 135 Cal.App.4th at p. 1098.) The plaintiff's evidence must be sufficient to support a reasonable inference that discrimination was a substantial motivating factor in the decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 (*Harris*);[4] *Guz, supra*, at pp. 353, 357.) The stronger the employer's showing of a legitimate, nondiscriminatory reason, the stronger the plaintiff's evidence must be in order to create a reasonable inference of a discriminatory motive.[5] (*Guz, supra*, at p. 362 & fn. 25.) This same burden-shifting analysis also applies to a count for retaliation if the employer presents evidence of a legitimate, nonretaliatory reason for an adverse employment action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042; *Loggins v. Kaiser Permanente Intern.* (2007) 151 Cal.App.4th 1102, 1108-1109 (*Loggins*).)

"[D]ownsizing alone is not necessarily a sufficient explanation, under the FEHA, for the consequent dismissal of an age-protected worker. An employer's freedom to

---

burden to show that a cause of action has no merit (Code Civ. Proc., § 437c, subd. (p)(2)) and therefore has the initial burden to present evidence that its decision was motivated solely by legitimate, nondiscriminatory reasons. (*Kelly, supra*, 135 Cal.App.4th at pp. 1097-1098.)

[4]     *Harris, supra*, 56 Cal.4th at page 232, held that the plaintiff in a FEHA employment discrimination action must prove that unlawful discrimination was "a substantial motivating factor" in the adverse employment decision, rather than only "a motivating factor" (emphasis omitted).

[5]     "[S]ummary judgment for the employer may thus be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred." (*Guz, supra*, 24 Cal.4th at p. 362.)

15

consolidate or reduce its work force, and to eliminate positions in the process, does not mean it may 'use the occasion as a convenient opportunity to get rid of its [older] workers.' [Citations.] Invocation of a right to downsize does not resolve whether the employer had a discriminatory motive for cutting back its work force, or engaged in intentional discrimination when deciding which individual workers to retain and release. Where these are issues, the employer's explanation must address them. [Citation.]

"On the other hand, if nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proferred reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with *a motive to discriminate illegally*. Thus, 'legitimate' reasons [citation] in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*. [Citations.]" (*Guz, supra*, 24 Cal.4th at p. 358.)

Credit Union presented evidence that it suffered financial losses in 2009 causing its board of directors to revise its budget and reduce its workforce. The board decided to eliminate one position in the accounting department and three teller positions, and implemented other cost-saving measures. Martin declared that he ranked the employees in the accounting department based on their performance evaluations and proficiency with spreadsheets, and ranked Davis last. Martin and Ruano declared that during the time when Davis split her workday between the accounting and operations departments, her absence from the accounting department did not adversely affect that department. Credit Union also presented evidence that the three tellers who were discharged at the

16

same time as Davis were all under 40 years of age, and that it did not hire anyone to replace her but instead reassigned her work to other employees.

We conclude that this evidence, if believed, would establish a legitimate, nondiscriminatory and nonretaliatory reason for Davis's discharge and would preclude a finding of prohibited discrimination or retaliation. The burden therefore shifted to Davis to present evidence sufficient to create a triable issue of fact that it is more likely than not that discrimination or retaliation was a substantial motivating factor in the decision.

Davis filed her own declaration and declarations by her attorney and Lowe in opposition to the summary judgment motion. She also filed deposition testimony, financial statements, and other documents. Davis cites her own declaration that in or about March 2007, around the time that Martin denied her request to work part time, Martin "commented on my age stating to me that as I was getting '*older*' and wanted to know if I could '*handle my work*.' " In our view, this evidence raises, at most, only a weak inference of prohibited bias. Viewed in light of the evidence that Credit Union reduced its workforce for financial reasons and selected Davis for dismissal because she ranked last in her department, this statement attributed to Martin is insufficient to create a reasonable inference of a discriminatory motive.

Davis also cites evidence that her duties were reassigned to younger employees and argues that she established a prima facie case of discrimination under the *McDonnell Douglas* test. We need not decide whether she established a prima facie case of discrimination. Even if she did, the cited evidence together with the evidence of

Martin's comments quoted above raises, at most, only a weak inference of prohibited bias and, when we view the evidence as a whole, is insufficient to create a reasonable inference of a discriminatory motive. (*Guz, supra*, 24 Cal.4th at p. 362, fn. 25.) We therefore conclude that the summary adjudication of Davis's fourth count for employment discrimination under FEHA was proper.

Davis argues that Credit Union failed to address her retaliation claim. We disagree. By presenting evidence of a legitimate, nondiscriminatory and nonretaliatory reason for terminating her employment, Credit Union shifted the burden to Davis to present evidence sufficient to create a triable issue of fact that it is more likely than not that retaliation was a substantial motivating factor in the decision. Davis failed to present such evidence in the trial court and fails to discuss the evidence in her appellant's opening brief. We conclude that she has shown no error and that the summary adjudication of her fifth count for retaliation was proper.

Davis's second count for breach of an implied covenant of good faith and fair dealing and third count for wrongful termination in violation of public policy are based on the same alleged discriminatory and retaliatory motives as the fourth and fifth counts. Credit Union's evidence of a legitimate, nondiscriminatory and nonretaliatory reason for the termination invokes the same burden-shifting analysis. (*Loggins, supra*, 151 Cal.App.4th at pp. 1108-1109 [wrongful termination].) Davis's failure to present evidence sufficient to create a reasonable inference of intentional discrimination or retaliation compels the conclusion that the summary adjudication of the second and third counts was proper.

c.       *Davis Failed to Create a Triable Issue as to Intentional Infliction of Emotional Distress, Unfair Competition, or Fraud*

Davis argues in a conclusory manner, without discussing the evidence, that Credit Union's conduct was outrageous and exceeded all bounds of tolerable behavior. Liability for intentional infliction of emotional distress requires a showing of extreme and outrageous behavior beyond all bounds of decency. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 946, disapproved on another point in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4.) The conduct must have been committed with the intention of causing, or reckless disregard of the probability of causing, emotional distress, and the plaintiff must have suffered severe emotional distress as a result. (*Agarwal*, *supra*, at p. 946.)

Considering all of the evidence presented on the motion, the most significant of which we have discussed *ante*, we conclude that Credit Union satisfied its initial burden as moving party to show that it committed no extreme and outrageous conduct, and Davis failed to present evidence creating a triable issue of material fact as to that showing. We therefore conclude that the summary adjudication of the sixth count for intentional infliction of emotional distress was proper.

Davis also argues in a conclusory manner, without citing the evidence, that Credit Union "failed to disprove by undisputed facts, that its practices were unfair," and therefore is not entitled so summary adjudication of her unfair competition count. The unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) Considering all of the evidence

19

presented on the motion, we conclude that Credit Union satisfied its initial burden as moving party to show that its conduct was not unlawful, unfair, or fraudulent, and Davis failed to present evidence creating a triable issue of material fact as to that showing. We therefore conclude that the summary adjudication of the seventh count for unfair competition was proper.

Finally, Davis argues in a conclusory manner that Credit Union represented that it would follow its own leave and antiretaliation policies but failed to do so. Citing 12 pages of her own declaration, she argues, "[t]hese are genuine issues that Respondent did not disprove, thus Respondent was not entitled to judgment as a matter of law, and the Trial Court should have denied Respondent's motion." Davis fails to discuss the elements of intentional misrepresentation, and she does not explain how Credit Union's showing in support of its motion was deficient or how the evidence creates a triable issue of material fact as to any element. We therefore conclude that she has shown no error in the summary adjudication of her eighth count for intentional misrepresentation.

4.     *The Trial Court Properly Denied the Request to Continue the Hearing*

A party opposing a motion for summary judgment or summary adjudication is entitled to a denial of the motion or a continuance for the purpose of obtaining additional evidence if the declarations filed in opposition to the motion show that facts essential to the opposition may exist but, for reasons stated, cannot then be presented. (Code Civ. Proc., § 437c, subd. (h).) A party invoking this provision must show (1) that the facts to be presented are essential to opposing the motion; (2) that there is reason to believe that such facts may exist; and (3) the reasons why additional time is needed to

20

present the facts. (*Frazee v. Seely* (2002) 95 Cal.App.4th 627, 633.) A denial or a continuance is mandatory if such a showing is made in good faith. (*Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1428.) But if the declarations filed in opposition to the motion fail to make such a showing, whether to grant a continuance is within the trial court's discretion. (*Ibid.*)

Davis contends she made the required showing and the trial court applied an erroneous legal standard by requiring a showing that further discovery would "provide a defense" rather than that "facts essential to justify opposition may exist" (Code Civ. Proc., § 437c, subd. (h)). We conclude that she failed to show that facts essential to justify the opposition may exist and therefore need not decide whether the trial court applied a different standard.

Davis argued in opposition to the motion, among other arguments, that Credit Union was financially sound at the time of her discharge and that its claim that she was laid off as part of a reduction in force due to financial difficulties was specious. A declaration by Davis's counsel stated that Davis sought discovery relating to Credit Union's financial condition and received some responses and redacted documents, and that the trial court had ordered further responses and further production of documents. Her counsel declared, "the necessary evidence is un-redacted documents, internal financial audits, NCUA [National Credit Union Administration] examination reports, records of the Defendant[']s expenses such as the writings showing the employees it hired when it claims it had a hiring freeze, the two credit unions it bought, the

21

$350,000.00 it spent in 2009 on it's [*sic*] change of name, new sign ($61 K alone) the CEO's new 50K car, travel, parties, massages etc."

Evidence that an employer's reasons for an adverse employment action were baseless or mistaken does not create an inference of intentional discrimination absent some other evidence creating a reasonable inference that discrimination was a substantial motivating factor in the decision. Even if Davis were able to prove that Credit Union lied about its reasons for terminating her employment, that alone would not support the conclusion that her termination was discriminatory or retaliatory or create a triable issue of material fact in this regard without some other evidence supporting a reasonable inference that discrimination was a substantial motivating factor in the decision. (*Guz, supra*, 24 Cal.4th at pp. 360-361.)

"[A]n inference of intentional discrimination cannot be drawn solely from evidence, if any, that the company lied about its reasons. The pertinent statutes do not prohibit lying, they prohibit discrimination. [Citation.] Proof that the employer's proffered reasons are unworthy of credence may 'considerably assist' a circumstantial case of discrimination, because it suggests the employer had cause to hide its true reasons. [Citation.] Still, there must be evidence supporting a rational inference that *intentional discrimination, on grounds prohibited by the statute, was the cause* of the employer's actions. [Citation.]" (*Guz, supra*, 24 Cal.4th at pp. 360-361.)

Davis did not argue and failed to show that she had any likelihood of obtaining further evidence that would support a reasonable inference of intentional discrimination or retaliation apart from evidence of Credit Union's purportedly sound financial

22

condition, which alone cannot support such a reasonable inference. We therefore conclude that she failed to make the required showing and that the trial court did not abuse its discretion in denying her request to continue the hearing.

5. *Davis Has Shown No Prejudicial Error in the Sustaining of Evidentiary Objections*

a. *Davis Forfeits any Challenge to the Rulings on Evidentiary Objections that She Fails to Argue on Appeal*

Davis contends the trial court erred in overruling her numerous evidentiary objections. She cites her objections to the declarations of Anita Reza, Ruano, and Martin, and to the attached exhibits, on the grounds of lack of personal knowledge, hearsay, relevance, speculation, and lack of authentication. But she discusses her objections to only two items of evidence and therefore forfeits any challenge to the rulings on her other objections.

An appellate brief must include argument supporting each point asserted (Cal. Rules of Court, rule 8.204(a)(1)(B)), and may not incorporate by reference documents filed in the trial court. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656.) The failure to support a claim of error with argument in an appellant's opening brief results in a forfeiture of the argument. (*Salehi v Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1161-1162.)

An appellant challenging an evidentiary ruling must identify the particular objectionable statement or other material and the grounds for objection, and explain why the ruling was erroneous. Merely citing evidentiary objections made in the trial

23

court is patently insufficient to challenge the rulings on those objections on appeal. We conclude that Davis forfeits any challenge to the rulings on her evidentiary objections apart from those specifically discussed and argued in her appellant's opening brief.

b.      *Davis Has Shown No Prejudicial Error in the Sustaining of Objections to the Ruano and Martin Declarations*

Davis objected to financial records that were described in the Ruano declaration as "the Credit Union's 5300 reports" on grounds of hearsay and lack of authentication, among other grounds. Copies of the reports were attached as exhibits to the declaration. She argued in the trial court, and argues on appeal, that Ruano failed to declare that she was the custodian of records.[6]

Ruano declared that, as Credit Union's chief financial officer, she oversaw the preparation of "Credit Union's 5300 reports," which were submitted quarterly to the National Credit Union Administration. She also declared that she was partly responsible for forecasting Credit Union's future financial performance based on its past financial performance and that she had access to Credit Union's financial records. Ruano declared that Credit Union's net income had steadily decreased from $1,757,339 in 2005 to $100,145 in 2008, and that 2009 was a financially challenging year due to an increase in projected loan losses. She declared that the Credit Union's 5300 reports reflected these same amounts.

---

[6]      Davis also argues on appeal that Ruano did not declare that the copies attached to her declaration were "true and correct" and therefore failed to properly authenticate the copies. Davis failed to assert this objection in the trial court and therefore cannot argue on appeal that such an objection should have been sustained.

24

We conclude that the financial information in the Ruano declaration itself was sufficient to show that Credit Union reduced its workforce for financial reasons. In light of this evidence, which Davis does not challenge on appeal, Credit Union's 5300 reports attached to the declaration were not essential to show a legitimate, nondiscriminatory and nonretaliatory reason for the adverse employment action. We therefore conclude that any error in the overruling of Davis's objections to the reports was harmless and cannot justify a reversal, so we need not decide whether the trial court properly overruled the objections.

Davis also objected to statements in the Martin declaration as hearsay. She argues on appeal, "Martin's declaration contains numerous statements purportedly made by Lourdes Ruano, for the sole purpose of establishing the truth of same." Davis fails to discuss the statements in her appellant's opening brief and has not shown that they constitute hearsay. In any event, the statements were not essential to Credit Union's showing of a legitimate, nondiscriminatory and nonretaliatory reason for the adverse employment action. Any error in the overruling of Davis's objections to the statements was harmless and cannot justify a reversal, so we need not decide whether the trial court properly overruled the objections.

## *DISPOSITION*

The judgment is affirmed.  Credit Union is entitled to recover its costs on appeal.


## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


CROSKEY, J.

WE CONCUR:



KLEIN, P. J.



ALDRICH, J.